[No. 8794.  In Bank. — February 25, 1886.]

S. BISHOP, APPELLANT, v. A. S. FULKERTH, RE-
SPONDENT.

| 68 | 607 |
|110|359|
| 68 | 607 |
|111|380|

WAREHOUSE RECEIPT — INDORSEMENT — NEGOTIABLE INSTRUMENT. — Under
the act of 1878, a warehouse receipt is negotiable, unless it is marked
non-negotiable across its face, and the indorsement thereof by the party
to whose order it is issued passes the absolute title to the property men-
tioned therein to the indorsee.

APPEAL from a judgment of the Superior Court of
Stanislaus County.

The facts are stated in the opinion.

*Wright & Hazen*, for Appellant.

*Schell & Bond*, for Respondent.

FOOTE, C.— Action of claim and delivery. The de-
fendant appeals from that part of the judgment awarding
ten bags of wool to the plaintiff; the latter appeals from
that part which adjudges twenty bags of wool to the de-
fendant.

The case comes here on the judgment roll alone, there
being no motion for a new trial.

The defendant contends that upon the findings he
should have had judgment for the thirty bags of wool;
the plaintiff that judgment for him should have been had
in like manner for the same amount.

This state of facts appears by the record: The Bank
of Sonoma, on the twenty-first day of April, 1882, insti-
tuted an action against one Linville upon two promissory

notes; upon the next day, an attachment was issued anciliary to that action, and a seizure was made by the sheriff of Stanislaus County, the defendant in this case, of thirty bags of wool, then in a warehouse, where it had been left on storage by Linville.

One warehouse receipt issued was as follows:—

"THE FARMERS' WAREHOUSE COMPANY OF OAKDALE, STANISLAUS COUNTY, CAL.

"No. 5.        OAKDALE, CAL., April 22, 1882.

"Received on storage from J. A. Linville, for account of self, in good order, in the Farmers' Warehouse Company's warehouse, at Oakdale, Stanislaus County, Cal., ten bags of wool, weighing 2,961 pounds, pile No. —— pounds, marked 'O,' which we agree to deliver in like order (dangers from fire or sweating excepted) on return of this receipt properly indorsed, and payment of storage as follows: storage, fifteen cents per bale first month; after that, five cents per month additional.

"Number of bags, ten.
"Number of pounds, 2961.
                              "A. S. EMERY, Superintendent."

The other receipt was in the same words and figures, except that it was numbered "4," and called for "20 bags of wool," "weighing 5,326 pounds, marked J. A. L."

At the time of the issuance of these receipts, the wool was accredited to Linville's account on said company's books, and no further entry thereof was made before the attachment herein was levied, and until after the warehouse receipts were surrendered by the plaintiff in this action.

Receipt "No. 4," about three hours and a half before the levy of the attachment, was indorsed as follows: "Deliver to F. Weyer. J. A. Linville,"—and immediately delivered to Weyer.

At the same time, receipt No. 5 was indorsed in the same language to S. Bishop, to whom, also, immediate delivery of it was made.

Bishop at that time notified Mr. Martin, its secretary, and person in charge of the company's warehouse, of the indorsement and delivery of receipt No. 5 to him, and showed the receipt so indorsed, but no other notice concerning the delivery or indorsement of that, or receipt No. 4, was ever given the company, and no change made in the marking or situation of the wool mentioned in the receipt, or upon the books of the company, until after the attachment was levied, and until the surrender of said receipts to said company.

Weyer retained his receipt until the 16th of May, 1882, when, for a valuable consideration, he indorsed it as follows:—

"Oakdale, Cal., May 16, 1882.

"For value received, I hereby assign, transfer, and deliver to S. Bishop the within receipt, and the wool represented thereby, and all rights thereto"; and then and there delivered it to Bishop.

Bishop retained both the receipts until long after the commencement of this action, when he surrendered them to the said company, and took said wool, and J. A. Linville's account was by them debited therewith.

All the wool was seized under the attachment by the defendant at about half-past 6 o'clock P. M., on the 22d of April, 1882, as Linville's property, in the action before mentioned, and judgment on the notes was afterwards, on the fifteenth day of May, 1882, obtained against Linville, and an execution issued thereon, and levied upon the property which had been and was then held by the defendant under attachment.

The law under which these receipts were issued is entitled "An act in relation to warehouse and wharfinger receipts," etc., and is found on page 950 of the acts of 1878. Section 5 thereof is as follows:—

"Warehouse receipts for property stored shall be of two classes: first, transferable or negotiable; and second, non-transferable or non-negotiable. Under the first of

these classes, *all property shall be transferable* by the indorsement of the party to whose order such receipt may be issued, and such indorsement of the party shall be *a valid transfer of the property* represented by such receipt, and may be in blank or to the order of another."

Section 8 provides:—

"All receipts issued by any warehouseman or other person under this act, other than negotiable, shall have printed across their face, in bold distinct letters, in red ink, the words 'non-negotiable.'"

The receipts under consideration were without those words in red ink. Upon their face it was agreed that the goods which they called for should be delivered to whomsoever returned them, properly indorsed, on payment of storage. A proper indorsement could only mean that of Linville, the party for whose account they were issued. The receipts, therefore, were negotiable, and by the terms of the act above mentioned they carried with them, by mere indorsement of the proper party, viz., Linville, the title to the wool against all the world.

It was perfectly competent for the legislature in its wisdom, for the convenience of commerce, to declare such instruments negotiable, and to make their proper transfer by indorsement carry with it the absolute, free, and unconditional title to the property specified in them, while remaining in the hands of the warehouseman.

The object and intent of the law seems to be that the warehouseman holds property embraced in such an instrument, as the property of any individual who, after its issuance, returns it to him, indorsed by the person for and on account of whom it was originally stored.

It was intended to do away with the necessity of any attornment of the warehouseman to the holder, by the indorsement of such a receipt, as a condition precedent to the transfer of the title and possession of the property.

By proper indorsement, such a receipt carries with it the absolute title to the property mentioned therein.

As much so as the transfer by indorsement of a certificate of deposit of a bank, which states that the money it calls for is deposited to the credit of an individual, and that it will be paid on the return of the certificate properly indorsed, invests the title to and right of possession of such money in the indorsee.

It follows that the plaintiff should have had judgment for the thirty bags of wool, or the value thereof in case a delivery could not be had, and damages for the detention thereof.

And the judgment should be reversed and cause remanded.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed and cause remanded, with directions to render judgment for plaintiff for thirty bags of wool, or the value thereof, in case a delivery cannot be had, and damages for the detention thereof.

THORNTON, J., dissenting.—I dissent. I find no error in the record, and think the judgment should be affirmed.

Rehearing denied.