[Argued November 9; decided December 26, 1893.]

## STATE *v.* KOSHLAND.

[S. C. 35 Pac. Rep. 32.]

1. CONSTITUTIONAL LAW— TITLE OF ACT— CONSTITUTION, ARTICLE IV., § 20. —The fact that a statute entitled "An act to regulate warehousemen, * * * and to declare the effect of warehouse receipts," and making it a crime to issue warehouse receipts for goods not in store, provides for a penalty for its violation, does not render it obnoxious to the constitutional prohibition against acts embracing subjects not expressed in the title.

2. WAREHOUSE RECEIPTS—INDICTMENT UNDER SECTIONS 4201 AND 4207, HILL'S CODE.— Section 4201, Hill's Code, makes it "the duty of every person owning, controlling, managing, or operating a warehouse or other place where grain * *. * or other product or commodity is stored," to deliver a receipt correctly stating the quantity received, and section 4207 provides a penalty for violating section 4201. An indictment charged that the defendant was engaged in keeping, controlling, operating, and managing, as owner, a warehouse, and was doing business as a warehouseman, and alleged that, being such warehouseman, he feloniously and unlawfully issued and delivered to the owner of certain pelts a receipt for a greater number of sheepskins than he had in store. *Held,* that the indictment was defective because it could not be determined therefrom whether the warehouse in question was one of those mentioned in the statute, and this notwithstanding it appears on the face of the indictment that the defendant kept, managed,

and operated the warehouse in which the sheepskins in question were stored.

3. NEGOTIABILITY OF WAREHOUSE RECEIPTS — CODE, ₴ 4201.— The warehouse receipts required by section 4201, Hill's Code, to be given for commodities stored in warehouses are negotiable regardless of their form.

APPEAL from Multnomah: M. G. MUNLY, Judge.

The defendant, M. Koshland, was indicted for the crime of issuing a warehouse receipt for goods not actually in store. So much of the indictment as is necessary to a proper understanding of the case is as follows:—

"The said M. Koshland, on the twenty-eighth day of February, in the year eighteen hundred and ninety-three, in the county of Multnomah and state of Oregon, was then and there engaged in keeping, controlling, managing, and operating, as owner, a warehouse, and was then ·and there doing business as such warehouseman, under the name of Koshland Bros., and, being such warehouseman as aforesaid, he, the said M. Koshland, did then and there unlawfully and feloniously issue and deliver to the Bank of British Columbia, a corporation, then and there the owner of the sheepskins described therein, a warehouse receipt, of which the following is a copy: —

"'No. 736.          "'KOSHLAND BROS.' WAREHOUSE,

"'PORTLAND, Oregon, February 28, 1893.

"'Received of the Bank of British Columbia, in good order, thirty-six thousand nine hundred and fourteen sheepskins, marked ——, for account of the Bank of British Columbia, on the following conditions:   Held for storage at the rate ——.   For any fractional part of a month the charge for storage will be the same as for a whole month.   Loss or damage from fire, flood, rats, other animals, insects, or the elements, if any, at owner's risk. No delivery to be made until this receipt is returned properly indorsed.          KOSHLAND BROS.'

"That, in truth and in fact, at the time of the issuance of said receipt as aforesaid by the said M. Koshland, the said M. Koshland had not actually in store thirty-six thousand nine hundred and fourteen sheepskins, as provided for in said warehouse receipt, nor had he actually in store at the said time any greater amount of sheepskins, as provided for in said warehouse receipt, than thirty-six hundred and sixty-five sheepskins, all of which acts were then and there done by the said M. Koshland with intent on his part to injure and defraud the Bank of British Columbia, a corporation as aforesaid, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon."

To this indictment the defendant demurred, alleging insufficiency of its facts to constitute a crime, and, the demurrer being overruled, the defendant entered a plea of not guilty. A trial was thereupon had, resulting in a verdict of guilty as charged in the indictment, upon which the court sentenced him to pay a fine of four thousand dollars, or stand committed until such fine was paid.

REVERSED.

Messrs. *John W. Whalley, Reuben S. Strahan* and *Martin L. Pipes,* for Appellant.

Messrs. *George E. Chamberlain,* Attorney-General, and *Wilson T. Hume,* District Attorney, for the State.

Opinion by MR. CHIEF JUSTICE LORD.

The record discloses that a number of objections were made to the indictment, and exceptions taken to the admission of testimony, to the instructions of the court, and to the refusal of the court to give the instructions asked by the defendant. At the outset it is claimed that the act under which the defendant was indicted, tried,

and convicted is contrary to section 20, article IV., of the state constitution, which provides that "Every act shall embrace but one subject and matters properly connected therewith, which subjects shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title," and is therefore unconstitutional and void. It is entitled "An act to regulate warehousemen, wharf-ingers, commission men, and other bailees, and to declare the effect of warehouse receipts." The ground of this objection is that neither the penalty nor the civil remedy provided by section 7 of the act are mentioned in the title, and hence that such section should be eliminated from the act, because it embraces matters not expressed in the title. This court, as well as the courts of all the states where a like constitutional provision exists, have given it a very liberal interpretation, and have endeavored to avoid that strictness of construction which would unnecessarily limit or cripple legislative enactments, and defeat the beneficial purpose for which such provision was adopted. Its object was to prevent the blending of incongruous subjects in the same act, and using the title as a deception: *David* v. *Portland Water Committee*, 14 Or. 98, 12 Pac. Rep. 174. This object is attained if the subject matter of the statute is germane to the title. "The insertion in a law of matters," said GILFILLAN, C. J., "which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to, the more full accomplishment of the object so indicated, is held to be in accordance with its spirit": *State ex rel. Stuart* v. *Kinsella*, 14 Minn. 525. · Hence, if the matters embraced in the act are congruous, and have a proper relation to each other, and are not foreign to the subject expressed in the title, the requirements of the

provision are not violated. The object of the statute, as expressed in the title, is "to regulate warehousemen, etc., and to declare the effect of warehouse receipts." The act prescribes and regulates the duties of warehousemen, and to secure performance of such duties so as to promote honesty and prevent fraud, it provides by section 7 a penalty for the violation of its provisions. That section, therefore, is not only germane to, and connected with, the subject of the act, but is essential to the accomplishment of the object indicated by the title; hence such section is not within the evil which the constitutional provision was intended to exclude.

2. It is also claimed that the indictment is defective for the further reason that the term "warehouse," as used, is not of itself a sufficient description of the place of storage to bring the defendant within the statute as a warehouseman. The first section of the statute is set forth in Hill's Code as follows: "Section 4201. It shall be the duty of every person keeping, controlling, managing, or operating, as owner, or agent, or superintendent of any company or corporation, any warehouse, commission house, forwarding house, mill, wharf, or other place where grain, flour, pork, beef, wool, or other produce or commodity is stored, to deliver to the owner of such grain, flour, pork, beef, wool, produce, or commodity a warehouse receipt therefor, which receipt shall bear the date of its issuance, and shall state from whom received, the number of sacks, if sacked, the number of bushels or pounds, the condition or quality of the same, and the terms and conditions upon which it is stored." In view of this language it is claimed that the defendant should be charged in the indictment with being a warehouseman who kept a warehouse "where grain, flour, pork, beef, wool, or other produce or commodity was stored," so as to show that the alleged warehouse which the defend-

ant kept came within the specification or descriptive words of said section, and that he was a warehouseman within the purview of the statute, and as such became subject to the duties imposed, and to the penalty prescribed for a violation of its provisions; for it is argued that it is not to be intended as a matter of law that a warehouse is a place where all or any of these particular products or commodities are stored, and, therefore, before the defendant can be made subject to the duties imposed by the statute, the indictment must allege such a description of the place of storage as will constitute him a warehouseman within the meaning of the statute. An indictment should charge the crime of which the defendant is accused with such precision and fullness as to inform him of the nature of his offense. Its allegations should make it certain that the act charged is forbidden by the statute. A statute prescribing what shall constitute an offense must necessarily be in general terms, and the office of the indictment is to make an application of its provisions to the case in hand. As a general rule, an indictment is sufficient if it follows the language of the statute, and clearly apprises the accused of the offense charged: *State* v. *Shaw*, 22 Or. 287, 29 Pac. Rep. 1028.

The indictment charges the defendant with operating as owner, a warehouse, and with being a warehouseman, and that as such he issued the warehouse receipt for the sheepskins as set out therein, when in fact, at the time of its issuance, he did not have them actually in store, nor any part thereof, except as alleged. But it does not charge the defendant with operating a warehouse for the storage of sheepskins or other commodity. It is true that one who operates, as owner, a warehouse is a warehouseman. The law defines a warehouse to be a building or place adapted to the reception and storage of goods and merchandise, and a warehouseman to be one

who receives such goods and merchandise to be stored in his warehouse for compensation or profit. But while the law defines what is a "warehouse," and necessarily what constitutes a "warehouse," this does not relieve the state of the necessity of specifying that the warehouse which the defendant is charged with operating as owner was for the storage of sheepskins and other commodities for which it is alleged he gave a warehouse receipt. All the law intends is that a "warehouse" is a place for the storage of goods, but what kind of goods, or produce, or commodity, for which it is kept or used as a place of storage by a party is not within its intendment. We cannot, therefore, infer, as a matter of law, that the defendant kept or operated a warehouse for the storage of sheepskins or any other particular commodity. That is a matter to be specified, and, when so specified, the face of the indictment will disclose whether the alleged warehouse which the defendant is charged with operating was for the storage of any of the commodities enumerated in the statute. The statute makes it the duty of one who keeps a warehouse for the storage of grain, flour, or other commodity, to deliver to the owner of such grain, or commodity, a warehouse receipt therefor, which duty he violates when he issues such receipt for goods not actually in store; so that when a defendant is charged with operating a warehouse, whether for the storage of grain, sheepskins, or other commodity, the indictment should so specify in order to apprise him—other sufficient allegations appearing—of the nature of his offense. If the defendant kept a warehouse for the storage of sheepskins, and it was so alleged, then the question of whether the word "commodity" in the statute is broad enough to include "sheepskins," would be properly before the court for its determination. As the warehouse which the defendant is charged with operating as owner is not

alleged to be a warehouse for the storage of grain, flour, or other commodity enumerated in the statute, we think the demurrer on this point was well taken.

3. Another question raised by the demurer is, as to whether it is the intention of the statute to make such receipts negotiable without regard to form. Upon this question the trial court held that the statute did not require such receipts to have a negotiable quality, and, therefore, that such receipt, although not negotiable in form, was sufficient, or within the statute. Section 4201, Hill's Code, among other things, provides that a warehouse receipt delivered to the owner of the commodity stored "shall bear the date of its issuance, and shall state from whom received, the number of sacks, if sacked, the number of bushels or pounds, the condition or quality of the same, and the terms and condition upon which it is stored." It will be observed that there is nothing in these requirements to indicate that such receipts shall have a negotiable quality. Section 5 of said statute, being section 4205 of the Code, provides that "All checks or receipts given by any person operating any warehouse or commission house, etc., are hereby declared negotiable, and may be transferred by indorsement of the party to whose order such check or receipt was given or issued, and such indorsement shall be deemed a valid transfer of the commodity represented by such receipt, and may be made in blank or to the order of another." It thus appears that the statute, after prescribing that the receipt shall contain certain requisites or characteristics, none of which are of a negotiable character, proceeds to declare that such receipts are negotiable and that they may be transferred "by indorsement of the party to whose order" such receipt was given or issued. There can be no doubt that if this section was cut short after declaring such instrument negotiable, it would have imparted the quality of negotia-

bility to them without regard to their form. But it is the use of the subsequent language in that connection—"to whose order such receipt was issued"—which indicates that they must be negotiable in form. Such language assumes that the receipt given by the warehouseman to the owner of the commodity stored is subject to his order. Upon this implication it is assumed that it was intended such warehouse receipts should be negotiable in form, otherwise the language of the statute would be that such receipts may be transferred by the indorsement of the party to whom they were issued, instead "of the part to whose order they were issued." It is insisted that this language means something, and is intended to have some effect, and that to give it the effect which its legal meaning imports, the conclusion is inevitable that such receipt must be negotiable in form in conformity with the rule that paper, to be negotiable, must contain negotiable words. The argument for the defendant, then, may be thus summarized: That warehouse receipts or bills of lading which the statute declares to be negotiable, are the same instruments which are made transferable by the indorsement of the party to whose order they are issued, and that, as these latter words imply that such receipts or bills of lading should be negotiable in form, their identity is fixed as the same instruments which are claimed to be negotiable; hence the statute only contemplates the issuance of warehouse receipts or bills of lading that contain negotiable words, or are negotiable in form. Without doubt the rule is well settled that every word and clause of a statute should; if possible, have assigned to it a meaning, leaving no useless words; but its application is always subordinate to the legislative intent, and is only to be followed so far as, and when it contributes to such result: Bishop on Written Law, § 82. The words of a statute must always yield to its manifest purpose.

Words loosely or unnecessarily used cannot change such purpose where the true intent is manifest in the statute itself. It will always be presumed that the legislature intended exceptions to its language when in conflict with the general object of the statute. The reason of the law in such case should prevail over the letter. The object of the statute, as declared in its title, is "to regulate warehousemen, wharfingers, and other bailees," and "to declare the effect of warehouse receipts." As warehousemen, wharfingers, etc., were enabled, after they had obtained possession of goods, or other commodities, and thus the *indicia* of ownership, to transfer them in fraud of the rights of the owners, there was a necessity for the regulation of the business in which such persons were engaged, and to declare the effect of the receipts or checks which they issue to such owner. There was, then, an existing evil which needed to be remedied by such legislative regulations as would prevent the issue of false receipts or checks, and punish fraudulent transfers of property by wharehousemen, wharfingers, and others.

To aid in effecting this object, and to facilitate the transfer of stored goods or commodities, all warehouse receipts are declared to be negotiable. The statute requires warehousemen or wharfingers to issue receipts or vouchers for goods or commodities stored, containing certain requisites specified, none of which include the quality of negotiability, and, after prohibiting them from issuing any false receipts or vouchers, or for goods not actually in store, etc., it declares such receipts so issued by them to be negotiable and transferable by indorsement. In declaring such receipts to be negotiable the statute necessarily meant and referred to the receipt or voucher which the warehouseman or wharfinger had issued to the owner of the goods or commodities stored. This receipt is made transferable by indorsement of such

owner to whom issued, and as it is not required to have any negotiable quality, it is immaterial whether or not it be negotiable in form.   Such receipts may be transferred by indorsement of the party to whom, or "to whose order" it was issued, and is within the statute.   They are required to be the true representative of goods or commodities actually in store, and their issuance is prohibited under any other conditions or circumstances.   The aim of the statute was to facilitate the transfer of stored goods, and its purpose was to protect the holders of warehouse receipts from imposition and fraud.   It was designed to protect the community as well as the holder of such receipts or vouchers.   By making such receipts issued by warehousemen negotiable, and transferable by indorsement of the party to whom they are issued, a valid transfer of the property represented in such receipt is effected, and, as such endorsement may be in blank, or to the order of another, they may thus pass from hand to hand. Hence the implications arising from the words "to whose order" do not limit the statute to such receipts as are only negotiable in form, when its clear purpose was to make any receipt issued by a warehouseman or wharfinger for the storage of grain or other commodity negotiable without regard to form.   For the reasons, however, suggested the judgment is reversed, and the cause remanded for such further proceedings as may be just and proper, not inconsistent with this opinion.

REVERSED.