Argued 14 February; decided 16 April, 1900.

## ANDERSON *v.* PORTLAND FLOURING MILLS CO.

[50 L. R. A. 235, 60 Pac. 839.]

NEGOTIABILITY OF WAREHOUSE RECEIPTS—STATUTES.

1. A statute declaring that warehouse receipts shall be "negotiable, and may be transferred by indorsement of the party to whose order such receipts was given or issued, and such indorsement shall be deemed a valued transfer of the commodity represented by such receipt" makes such receipts negotiable, in the sense that a transfer thereof by indorsement carries the absolute title to the commodity represented by the receipt and protects a *bona fide* purchaser for value from unknown equities between the original parties: *State* v. *Koshland*, 25 Or. 178, cited.

NEGOTIABILITY OF WAREHOUSE RECEIPTS—PAROL EVIDENCE.

2. Section 4205 of Hill's Ann. Laws, declaring that warehouse receipts shall be negotiable and transferable by indorsement, does not render such receipts negotiable, so as to render parol evidence inadmissible, in an action on such receipts, to show that the firm issuing the same was in fact acting as agent. In that respect such receipts are still simple contracts.

ESTOPPEL TO CHANGE POSITION DURING TRIAL.

3. After a party has tried an action on a certain theory he cannot, on appeal, change his position and insist that his opponent has not performed some act that under the first position was immaterial. In other words, a party must be consistent throughout the trial and appeal. Thus, in an action for the value of wheat claimed to have been delivered to defendant for storage in its warehouse, where defendant denied such delivery and plaintiff's title and right to possession, it cannot, on appeal, claim that plaintiff's written tender of the amount due for charges, etc., was insufficient, and that the money should have been paid into court: *Wyatt* v. *Henderson*, 31 Or. 48, followed.

From Clackamas: THOS. A. McBRIDE, Judge.

Action for conversion of wheat by J. F. Anderson against the Portland Flouring Mills Co. The defendant is a corporation engaged in the business of buying, selling, and storing wheat and manufacturing flour at Oregon City. During the years 1891, 1892, and 1893, John Gash, George Anderson, William McAlister, R. T. McNichols, J. P. Frizzell, and the plaintiff severally delivered wheat to W. E. Loughmiller & Co., at Switzerland and other stations on the Woodburn Branch of the Southern Pacific Railway, amounting in the aggregate to four thousand two hundred and fifty bushels, which by permission of the owners was shipped to the defendant, at Oregon City, for storage in its warehouse. Loughmiller

& Co. subsequently failed, and, being unable to replace the wheat or pay therefor, the claims of the respective parties were assigned to the plaintiff, who commenced this action to recover its value, on the theory that Loughmiller & Co., in receiving and shipping the wheat, were acting for and as the agents of the defendant, and it is therefore liable for their contracts. The complaint contains six causes of action, which are the same, except as to names, dates, and amounts. The first may therefore be used as a type of all. It alleges, in substance, that during the years 1891, 1892, and 1893, one John Gash, at the special instance and request of the defendant, did from time to time during such years, through Loughmiller & Co., its agents, ship from Switzerland, in Marion County, and deliver to the defendant at Oregon City, two thousand two hundred and sixty-three bushels of wheat ; that such shipments were made, and wheat delivered to and received by defendant, subject to the conditions that defendant was to have the first privilege of purchasing the wheat for cash at any time Gash might desire to sell ; that it should be subject to storage charges of two and one-half cents per bushel, and freight charges from the point of shipment ; that upon demand, and the payment of freight, storage charges, and four cents per bushel for sacks, the defendant would deliver to Gash an equal number of bushels of good merchantable wheat, sacked ; that in October, 1894, Gash, for a valuable consideration, assigned and transferred to the plaintiff all his claim to the wheat so shipped and delivered to the defendant ; that after the assignment and transfer, and prior to the commencement of this action, the plaintiff duly notified defendant thereof, and demanded the wheat, accompanying the demand with an offer in writing to pay all freight and storage charges, and for sacks, but defendant refused

to deliver the wheat, and positively denied that plaintiff or Gash was entitled to the same, or any part thereof.

The defendant by its answer denies the receipt of the wheat as alleged in the complaint, and the contract therein set out, and, for an affirmative defense, avers that during the times mentioned Loughmiller & Co. were engaged in a general warehouse and storage business, bought and sold grain, and acted as agents for others in the sale thereof, at Silverton, Switzerland, and elsewhere, and during such time forwarded and sold grain to the defendant; that in the conduct of their business they received wheat from various persons, and, among others, from the plaintiff and his alleged assignors, upon the express condition and agreement that the identical wheat left with and received by them need not be returned, but the owner should have the privilege of returning a similar amount of the same quality of wheat instead, upon the payment of freight, storage charges, and four cents per bushel for sacks, as shown by receipts issued by Loughmiller & Co. to such persons; that, prior to any of the times stated in the complaint, the defendant entered into an agreement with Loughmiller & Co. for the purchase from and storage for them of wheat at its mills at Oregon City; that by such agreement it was expressly understood and agreed that the defendant was to deal solely and entirely with Loughmiller & Co., and they were not to be in any respect the agents of defendant in such transactions, or for any purpose whatever; that, from time to time, defendant purchased from Loughmiller & Co., under such agreement, large quantities of wheat, it being at the time ignorant as to the sources from which they received the same; that if any of the wheat received by it came from, or originally belonged to, the plaintiff, or any of his alleged assignors, it had no notice or knowledge thereof. The reply put in issue the allegations of the answer, and, the

trial resulting in a judgment for plaintiffs, the defendant appeals, assigning as error the admission of certain testimony, and the overruling of its motion for nonsuit.

AFFIRMED.

For appellant there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Messrs. Geo. H. Williams* and *Stewart B. Linthicum.*

For respondent there was a brief over the names of *William Wallace Thayer* and *William H. Holmes*, with an oral argument by *Mr. Holmes*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. To support the first, third and sixth causes of action, the plaintiff introduced in evidence five warehouse receipts, dated at Silverton, Oregon, and signed by W. E. Loughmiller & Co., and was permitted, over defendant's objection and exception, to give evidence *aliunde* the receipts, tending to prove that Loughmiller & Co., in signing and issuing them, were acting as the agents of defendant, and that such receipts were in fact the contracts of the defendant. The admission of this evidence constitutes the first assignment of error upon which the defendant relies for a reversal of the judgment. The wheat receipts referred to are identical, except as to dates, names and amounts, and it will be sufficient for the purposes of this appeal to set forth one of them. It is as follows :

"No 1.                    SILVERTON, Or.; Sept. 7, 1891.

"Received from John Gash one thousand two hundred and ninety-four 40–60 bushels of good, merchantable wheat, to be forwarded to Oregon City, Oregon, and stored with the Portland Flouring Mills Co., subject to

the following conditions :   W. E. Loughmiller & Co. are
to have the first privilege of purchasing this wheat for
cash at any time the storer concludes to sell, and said
wheat is subject to storage charges of two and one-half
cents per bushel, and freight charges from shipping
[point] to Oregon City.   Upon demand, this quantity of
good, merchantable wheat will be delivered to the storer,
sacked, upon the payment of the above-mentioned stor-
age and freight charges, and four cents per bushel for
sacks ; but no order of storer will be accepted by the
Portland Flouring Mills Co. unless countersigned by W.
E. Loughmiller & Co.   But in no case shall W. E. Lough-
miller & Co., or the Portland Flouring Mills Co., be held
liable for accidental loss or damage to said wheat by the
action of the elements.

"W. E. LOUGHMILLER & Co.

"Per J. A. L."

"1,294 40–60 bushels."

1.   The defendant's contention is that, since warehouse
receipts in this state are by statute made negotiable, the
rule of law that the liability of a party upon a negotiable
instrument must be established by the terms of the writ-
ing itself, and cannot be shown by evidence *aliunde*, is
applicable to such receipts.   It may be regarded as a
settled rule of the common law that, if the person sought
to be charged upon a negotiable instrument is not bound
upon the face of the writing, he is not bound at all, and
it cannot be shown that the maker was in fact the agent
of another, and that such other is bound by the instru-
ment.

The observation of ANDREWS, J., in *Briggs* v. *Partridge,*
64 N. Y. 357 (21 Am. Rep. 617), that "persons dealing
with negotiable instruments are presumed to take them
on the credit of the parties whose names appear upon
them, and a person not a party cannot be charged upon
proof that the ostensible party signed or indorsed as his
agent," is a clear statement of the law, and supported by

the authorities : Chitty, Bills & N.*33 ; *Heaton* v. *Myers*, 4 Colo. 59 ; *Arnold* v. *Sprague*, 34 Vt. 402 ; *Stackpole* v. *Arnold*, 11 Mass. 27 (22 Am. Dec. 150); *Bedford Ins. Co.* v. *Covell*, 8 Metc. (Mass.) 442 ; *Tucker Mfg. Co.* v. *Fairbanks*, 98 Mass. 101 ; *Rendell* v. *Harriman*, 75 Me. 497 (46 Am. Rep. 421); *De Witt* v. *Walton*, 9 N. Y. 571 ; *Robinson* v. *Kanawha Valley Bank*, 44 Ohio St. 441 (58 Am. Rep. 829, 8 N. E. 583). But this rule is, in our opinion, confined to commercial contracts, which represent, and, in a measure, pass as money,— such as bills of exchange and promissory notes. Parol evidence is not admissible to charge an unnamed principal on such an instrument ; for, in the language of the authorities, a note or bill of exchange " 'is a courier without luggage,' whose countenance is its passport :" 1 Daniel, Neg. Inst. (4 ed.) § 303. And as said in an early case on the question : "It would be of dangerous consequence to trade to admit of evidence arising from extrinsic circumstances. * * * A bill of exchange is a contract, by the custom of merchants, and the whole of that contract must appear in writing :" *Thomas* v. *Bishop*, 2 Strange, 955. Mr. Daniel, in the section already cited, says : "The rule excluding parol evidence to charge an unnamed principal as a party to nogotiable paper is derived from the nature of such paper, which, being made for the purpose of being transferred from hand to hand, and of giving to every successive holder as strong a claim upon the original party as the payee himself has, must indicate on its face who is bound for its payment ; for any additional liability not expressed in the paper would not be negotiable." Section 4205 of Hill's Ann. Laws provides that "all checks or receipts given by any person operating any warehouse, commission house," etc., "are hereby declared negotiable, and may be transferred by indorsement of the party to whose order such check or receipt was given or issued, and such

indorsement shall be deemed a valid transfer of the commodity represented by such receipt, and may be made either in blank or to the order of another.'' By this statute, a warehouse receipt, regardless of its form, is made negotiable, in the sense that a transfer thereof by indorsement carries the absolute title to the commodity represented by the receipt, and a *bona fide* purchaser for value is not chargeable with knowledge of any notice of any equities between the original parties, as in case of the assignment of an ordinary chose in action : *State* v. *Koshland*, 25 Or. 178 (35 Pac. 32); *Bishop* v. *Fullkerth*, 68 Cal. 607 (10 Pac. 122); *Price* v. *Wisconsin Fire Ins. Co.* 43 Wis. 267 ; *First Nat. Bank* v. *Dean*, 137 N. Y. 110 (32 N. E. 1108); *First Nat. Bank* v. *Boyce*, 78 Ky. 42 (39 Am. Rep. 208); *Collins* v. *Rosenham* (Ky.) , 43 S. W. 726.

2.   But the statute does not give to such receipts all the attributes of negotiable paper.   A transfer of the receipt by indorsement may operate, under the statute, to transfer and vest the title of the goods in the purchaser, where before it would not, but the nature of the contract itself is unchanged.   It is in no sense a negotiable instrument under the law merchant.   It is simply a written acknowledgment by the warehouseman that he has received, and holds in store for the depositor, the amount and description of property named in the receipt, upon the terms and conditions therein stated, and is nothing more than a written contract between the parties, which by the statute is made negotiable for certain purposes.   The word ''negotiable'' is evidently not used in the statute in the sense in which it is ordinarily applied to bills of exchange and promissory notes.

A very satisfactory case upon this subject is *Shaw* v. *Railroad Co.* 101 U. S. 557.   In that case the question was as to the right of a purchaser from a thief, for value, and without notice, of a bill of lading issued in Missouri

for goods to be carried to Pennsylvania, and which by
the statutes of both states was made negotiable. In con-
sidering the question, it did not appear necessary to in-
quire whether the statute of Missouri or of Pennsylvania
should be regarded as affecting the contract, since, in the
opinion of the court, there was no substantial difference
between the statutes of the two states in that regard.
The language of the Pennsylvania statute was, they (bills
of lading) "shall be nogotiable and may be transferred by
indorsement and delivery," while that of Missouri was,
"they shall be negotiable by written indorsement thereon
and delivery in the same manner as bills of exchange and
promissory notes." But neither statute undertook to de-
fine the effect of such a transfer, and it therefore became
necessary for the court to look outside of them to learn
what the legislature meant by declaring such instruments
" negotiable." After defining that term, as applied to
contracts, to mean primarily the capability of being trans-
ferred by indorsement and delivery, so as to give to the
indorsee a right to sue thereon in his own name, and
pointing out that certain consequences generally, though
not always, follow the indorsement or transfer of bills
and notes,— such as the liability of an indorser and the
rights of a *bona fide* purchaser before maturity and from
a finder or thief,—it says : "But none of these conse-
quences are necessary attendants or constituents of ne-
gotiability. That may exist without them. A bill or
note past due is negotiable, if it be payable to order or
bearer, but its indorsement or delivery does not cut off the
defenses of the maker or acceptor against it, nor create
such a contract as results from an indorsement before
maturity, and it does not give to the purchaser of a lost
or stolen bill the rights of the real owner. It does not
necessarily follow, therefore, that, because a statute has
made bills of lading negotiable by indorsement and de-

livery, all these consequences of an indorsement and delivery of bills and notes before maturity ensue or are intended to result from such negotiation.''

Again, after observing that bills of exchange and promissory notes are exceptional in their character, pass from hand to hand as coin, and the interests of trade require that a *bona fide* purchaser for value should not be bound to look beyond the instrument, the court proceeds : '' The reason can have no application to the case of a lost or stolen bill of lading. The function of that instrument is entirely different from that of a bill or note. It is not a representative of money, used for the transmission of money, or for the payment of debts or for purchases. It does not pass from hand to hand as bank notes or coin. It is a contract for the performance of a certain duty. True, it is a symbol of ownership of the goods covered by it—a representative of those goods. But, if the goods themselves be lost or stolen, no sale of them by the finder or thief, though to a *bona fide* purchaser for value, will divest the ownership of the person who lost them, or from whom they were stolen. * * * Bills of lading are regarded as so much cotton, grain, iron, or other articles of merchandise. The merchandise is very often sold or pledged by the transfer of the bills which cover it. They are, in commerce, a very different thing from bills of exchange and promissory notes, answering a different purpose and performing different functions. It cannot be, therefore, that the statute which made them negotiable by indorsement and delivery, or negotiable in the same manner as bills of exchange and promissory notes are negotiable, intended to change totally their character, put them in all respects on the footing of instruments which are the representatives of money, and charge the negotiation of them with all the consequences which usually attend or follow the negoti-

ation of bills and notes. Some of these consequences would be very strange, if not impossible; such as the liability of indorsers, the duty of demand *ad diem,* notice of nondelivery by the carrier, etc., or loss of the owner's property by the fraudulent assignment of a thief. If these were intended, surely the statute would have said something more than merely make them negotiable by indorsement.''

We are of the opinion, therefore, that a warehouse receipt is not negotiable, within the meaning of the rule prohibiting the admission of parol testimony to charge one not bound upon the face of the instrument, but in that respect it is a simple contract, and such evidence is admissible to show that, although executed by and in the name of an agent, it is in fact the contract of the principal, and he is bound thereby : *Barbre* v. *Goodale,* 28 Or. 465 (38 Pac. 67, 43 Pac. 378).

It is contended, however, that, even if the receipts are not negotiable, they are nevertheless presumptively the contract of Loughmiller & Co. alone, and plaintiff cannot recover upon either the first, third, or sixth cause of action, for the reason that there was no evidence to rebut such presumption, or to show that Loughmiller & Co. were in fact defendant's agents. A considerable portion of defendant's brief is devoted to the discussion of this question, which we regard, however, as one of fact for the jury, and not the court. There was evidence given at the trial on behalf of plaintiff, tending to show, and from which the jury were justified in finding, that Loughmiller & Co. were in fact the agents of defendant, and received the wheat and executed the receipts as such. It is unnecessary for us to incumber this opinion by a reference to the testimony in detail. It is sufficient to say that we have examined it with much care, and are satis-

fied that the court committed no error in overruling the
motion for nonsuit on this ground.

It is next claimed that plaintiff cannot recover upon the
second, fourth, and fifth causes of action,—those repre-
senting the claims of Frizzell, McNichols, and McAlister,
—because of a failure of proof.   The evidence offered to
establish these several causes of action consisted of load
checks, and the oral testimony of witnesses that the wheat
was received upon the same terms and conditions, and
under the same contract, as that of the other parties.
The load checks are all substantially the same.   The fol-
lowing may serve as a specimen :

"No. 56.       Aug. 23.       ——, Or., ——, 1893.

Received by R. T. McNickle, by W. E. Loughmiller &
Co., for the Portland Flouring Mills Co., —— bushels,
3,835 lbs., good merchantable wheat, to be forwarded to
Oregon City, and there stored in the P. F. M. Co.'s ware-
houses for the benefit of the owner.   No. of sacks re-
turned, 20 sacks.

W. E. LOUGHMILLER,
Weigher."

It is claimed that these load checks constitute the con-
tract under which the wheat was received by Loughmiller
& Co., and that they do not support the allegations of the
complaint.   But the evidence shows that when a farmer
delivered a load of grain it was the custom to give him a
load check as an evidence thereof, and when he completed
his season's hauling a receipt was issued for the entire
amount of grain delivered, in form the same as the one
heretofore set out, and hence the load checks do not evi-
dence the contract under which the wheat was received,
but are simply memoranda of each load of wheat as it
was delivered ; and so parol evidence to the effect that
the wheat represented in the second, fourth, and fifth

causes of action was delivered and received under the same contract as in the case of the other parties was competent.

Next it is claimed that plaintiff cannot recover upon any of the causes of action, because, if defendant is under any liability to plaintiff, it is in tort, and not contract. This contention is based upon the theory that Loughmiller & Co. were not the agents of defendant. But, as we have already seen, there was, in our opinion, sufficient evidence to carry that question to the jury, and hence this position is without merit.

3.   It is next contended that the payment or tender of storage, freight, and sack charges was a condition precedent to the right to maintain this action, and the written tender was not sufficient, but the money should have been paid into court. The defendant, by its answer, denies the contract alleged in the complaint, and the plaintiff's title and right to the possession of the wheat in controversy, and expressly puts its refusal to deliver upon the ground that neither plaintiff nor his assignors ever shipped or delivered to it any wheat whatever ; and therefore it cannot now be permitted to say that its refusal to deliver the grain was on account of the failure of plaintiff to pay the charges referred to :   *Wyatt* v. *Henderson,* 31 Or. 48 (48 Pac. 790). This disposes of all the questions raised on the appeal, and, finding no error in the record, the judgment is affirmed.                                        AFFIRMED.