Argued June 1, reversed July 3, 1917.

## ALVORD v. BANFIELD.

(166 Pac. 549.)

**Landlord and Tenant—Termination of Lease—Liability for Rent.**

1. When the lessor terminated a lease, the lessee's liability to pay rent accruing thereafter was extinguished.

**Landlord and Tenant—Termination of Lease—Covenants.**

2. When the relations of landlord and tenant are at an end, and the lessee has surrendered and the landlord accepted the premises, thus putting an end to the lease, so far as the rights of the parties

are concerned, all covenants in favor of either are terminated at once, where no cause of action has accrued or matured during the life of the lease.

### Landlord and Tenant—Surrender and Acceptance—Cause of Action for Diminished Rent.

3. In the absence of express covenant to the contrary, a landlord, after accepting a surrender of the premises, has no cause of action for damages against his former tenant by reason of diminished rent paid thereafter.

### Bankruptcy—Recovery of Deposit from Lessor—Rescission of Lease—Deposit.

4. The trustees in bankruptcy of a lessee corporation, on surrender or rescission of the lease by the landlord when the lessee was not in default, were entitled to repayment by the landlord of the money deposited as security for payment of rent or performance of the covenants of the lease; if the lessee was in default, they were entitled to the deposit, less the amount of rent due and in arrears and compensation for preceding breaches of the lease.

### Damages—Liquidated Damages or Penalty—Intention of Parties.

5. As a general rule, the intention of the contracting parties is an important, if not a conclusive, element in determining whether a sum stipulated to be paid in case of breach of contract is to be regarded as liquidated damages or a penalty.

### Damages—Liquidated Damages or Penalty—Preference of Law.

6. The tendency and preference of the law is to regard a stipulation or covenant as of the nature of a penalty rather than as liquidated damages.

### Damages—Liquidated Damages or Penalty.

7. Where there is an agreement to pay, for breach of contract, without regard to its date, a fixed unvarying sum, when, in the nature of things, the date of breach would be all-important in determining the element of actual damages, the stipulation is one for a penalty.

### Damages—Liquidated Damages or Penalty.

8. If actual damages are neither doubtful, speculative, nor difficult of proof, and stipulated damages lose sight of the principle of compensation, the amount stipulated will be treated as a penalty.

### Damages—Liquidated Damages or Penalty—Deposit by Lessee.

9. Where the lessee of an apartment house, deposited $2,500, which, by the lease, was "fixed and agreed upon as the full measure of damages * * in the event·that said lessee * * shall violate any of the terms, covenants, or conditions" of the lease, which contained covenants for performance by the lessee of various acts, some of more and some of less importance, it being clear from the lease that the deposit was the lessee's property, as it was to be paid interest during such time as it should not be in default for breach of condition or covenant, the money was deposited as security for performance of the terms of the lease, and should be regarded as a penalty, not as liquidated damages.

Landlord and Tenant—Recovery of Deposit—Pleading.

10. In an action by the trustees in bankruptcy of a corporate lessee to recover a security deposit from the landlord, the complaint, alleging that a person executed the lease in his own name, as "and for" the agent of the corporate lessee, was not subject to demurrer, though its rhetoric was not perfect, in the absence of any denial of the facts asserted or other appropriate defense, particularly when considered with the averment that the lessee paid the money as a security deposit, showing the lease was executed in the transaction of the company's business.

Evidence—Charging Principal on Simple Contract—Parol Evidence.

11. Parol evidence is admissible to charge a principal on a simple contract not negotiable where the agent's name appears as principal, also to show the contract was executed with intent to bind the principal or for him.

Landlord and Tenant—Tenant's Action to Recover Deposit—Pleading —"Assume."

12. The complaint, which alleged that defendant, to whom the leased premises were sold subject to the lease, "assumed all the lessor's obligations thereunder, including the obligation of the original lessor with reference to the repayment of the deposit in said lease provided for," showed that defendant agreed to perform the conditions of the lease as to the deposit; "assume" meaning, in matters of law, to take upon oneself.

[As to damages recoverable by tenant in action for wrongful eviction, see note in Ann. Cas. 1912A, 860.]

From Multnomah: WILLIAM N. GATENS, Judge.

Action by W. C. Alvord, W. H. Beharrell and E. R. Corbett, trustees in bankruptcy of the estate of I. Gevurtz & Sons, against M. C. Banfield, to recover a deposit to secure the payment of rent.

From an order dismissing the action, plaintiffs appeal. Reversed.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by the trustees in bankruptcy of the estate of I. Gevurtz & Sons, a corporation, to recover $2,500 deposited by the bankrupt as a forfeit in case of a breach of the conditions of a certain lease. The trial court sustained defendant's demurrer to the complaint and dismissed the action. Plaintiffs appeal.

After the formal allegations of the complaint as to the corporate character of I. Gevurtz & Sons, and the official status of plaintiffs, the complaint sets forth in substance the following facts: On March 6, 1911, Philip Gevurtz, acting as the agent of I. Gevurtz & Sons, entered into a lease with one George A. Housman of a certain three-story and basement apartment house known as number 730 Hoyt Street, in the City of Portland, Oregon, then in the course of construction, for a term of five years at a rental of $500 a month, aggregating $30,000. The lessee covenanted to pay promptly all charges and expenses for operating the premises leased, including charges for water, gas, fuel, heat, electric light, power, and telephone service used therein, and at his own expense to keep the interior and exterior of said premises, except as to the roof and foundation, in proper repair during the term of the lease. It was stipulated that all general repairs and alterations should be made by the lessee without any cost or expense to the lessor. A copy of the lease is made a part of the complaint. It is alleged that I. Gevurtz & Sons deposited with G. A. Housman the sum of $2,500 at the time of taking possession of the premises, as provided for in such lease; that Housman sold and transferred to defendant M. C. Banfield all his right, title, and interest in the leased premises subject to the demise and accounted to him for the deposit and Banfield assumed all the obligations of the original lessor under the terms of the lease. The agreement provided that for any failure of the lessee to fulfill any of the covenants of the lease the lessor might at his option terminate the lease and take possession of the premises. That part of the language of the instrument bearing upon the deposit is as follows:

"It is further agreed by and between the lessor and the lessee herein, that the sum of $2500 is hereby fixed and agreed upon as the full measure of demands for all claims or demands of said lessor against the said lessee in the event that said lessee, his heirs or assigns shall violate any of the terms, covenants or conditions of this lease, on his part to be observed and performed, or in the event the lessor herein may exercise any option given him under the terms of this lease whereby his lease shall be violated and forfeiture of the lease declared thereunder; which said sum of $2500 said lessee hereby agrees to pay to said lessor upon taking possession of the above described premises to be applied by said lessor at any time during the term of this lease as liquidated, fixed and agreed damages upon termination of the lease by option of lessor as herein provided, or for failure of the said lessee or those having his interests in the premises so to perform and observe the said terms, covenants and conditions or either of them. And the measure of damages against the said lessee or those having his interest in the premises shall be limited to the said sum of $2500, and he shall not be liable to the said lessor in any other sum for any breach of the conditions, covenants, or terms of this lease or upon a forfeiture of the said lease. Said lessor shall hold said $2500 during the term of this lease and shall pay to the lessee six (6%) per cent per annum interest therefor during time as the lessee shall not be in default for breach of condition or covenant. Said interest to be paid annually. · And if lessee shall not be in default it shall be applied in payment of the last five months' rent, in which event the interest thereon shall cease five months before the end of said term. * *

"It is further understood and agreed by and between the lessor and the lessee herein, that in case the interest of the lessee or those having his interest in the premises shall be attached or attempted to be attached, sold under execution or attempted to be sold under execution, or a lien or interest acquired by a

third party to the interest of the lessee herein or those having his interest in the premises, including the possession or attempted possession of any person as a receiver of any court or by any other order of any court, or as a trustee in bankruptcy, then during the term in any of the above-mentioned events at the option of the lessor herein or those having his estate in the premises, this lease may be terminated and declared null and void and all rights of the said lessee or those having his interest in the premises and those claiming under him or them, as well as the right of any receiver, attaching creditor, execution purchaser or trustee in bankruptcy, to occupy the premises, shall immediately terminate and they or either of them, regarded as trespassers by the lessor or those having his interest in the premises."

The agreement also contained this stipulation:

"It is further understood and agreed that the lessor shall furnish gas ranges, window shades, electric fixtures and refrigerators at his own proper cost and expense before possession is delivered as provided hereinbefore. But such gas ranges, window shades, electric fixtures and refrigerators shall remain the property of the lessor and shall be maintained or replaced during the term of this lease by the lessee at his own cost and expense."

It it alleged that about April 25, 1913, M. C. Banfield terminated the lease, at which time no part of the $2,500 and the accumulated interest thereon had been or since has been applied on account of the last or of any rental whatever due under the terms of the lease, and that by reason thereof the plaintiffs herein are entitled to receive a return of the above sum with interest thereon at the rate of six per cent per annum from March 6, 1911, to date. The plaintiffs assert a demand and nonpayment.          REVERSED.

For appellants there was a brief and an oral argument by *Mr. Chriss A. Bell.*

For respondent there was a brief over the name of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

MR. JUSTICE BEAN delivered the opinion of the court.

The demurrer to the complaint is a general one. In its support the defendant relies upon two points: (1) That the sum of $2,500 sought to be recovered in this action was liquidated damages and not a penalty; (2) that there was no privity of contract between the defendant and I. Gevurtz & Sons, the bankrupt named in the complaint. There is a paucity of expression as to the facts which might have some influence in determining whether the contract in question provides for liquidated damages or a penalty in the event of a breach of any covenant on the part of the lessee. The question is presented with much care and apparently after great research by the learned counsel for both parties; therefore, we are disinclined to pass the subject of our own volition. It is averred that defendant, M. C. Banfield, successor of the lessor, terminated the lease about April 25, 1913. It also appears that about that time I. Gevurtz & Sons, the party that made the deposit claimed, and was interested as lessee in the demised premises, was adjudged a bankrupt by order of the United States Court and plaintiffs were appointed as trustees of its estate. It may perhaps fairly be inferred by construing the language of the complaint most strongly against the pleader that the lessor's grantee, to whom we will refer hereafter as the lessee, had the right under the stipu-

lation quoted to terminate the lease and that he exercised that option. Briefly stated, the case comes to us with no showing of any actual damage to the landlord caused by any act of the lessee. No rent appears to be in arrears. Under these conditions and considering the stipulations of the lease we will proceed.

1. When the lessor terminated the lease as alleged in the pleading the liability of the lessee to pay rent accruing thereafter was extinguished: 24 Cyc. 1162; *Meagher* v. *Eilers Music House,* 77 Or. 70 (150 Pac. 266); *Carson* v. *Arvantes,* 10 Colo. App. 382 (50 Pac. 1080).

2. When the relations of landlord and tenant are at an end and the lessee has surrendered the premises and the landlord accepted the same and thus put an end to the lease, so far as the rights of the parties to it are concerned all covenants therein in favor of either party are at once terminated where no cause of action has accrued or matured during the life of the lease: 2 Underhill on Landlord and Tenant, pp. 1238, 1239; sec. 730; *Silva* v. *Bair,* 141 Cal. 599 (75 Pac. 102); *Deane* v. *Caldwell,* 127 Mass. 242, 248.

3. In the absence of express covenants to the contrary a landlord, after accepting a surrender of the premises, has no cause of action for damages against his former tenant by reason of diminished rent paid thereafter: *Meagher* v. *Eilers Music House,* 77 Or. 70 (150 Pac. 265); *Carson* v. *Arvantes,* 10 Colo. App. 382 (50 Pac. 1080).

4. The trustees of I. Gevurtz & Sons, who are successors to its interest, were entitled on a surrender or rescission of the lease to be repaid by the lessor the money deposited by the lessee as security for the payment of rent or for the performance of the cove-

nants of the lease, if the lessee was not then in default; or, if it was in default, to the deposit less the amount of rent due and in arrears, and compensation for preceding breaches of the contract: 1 Underhill on Landlord and Tenant, p. 594, § 378; *Meagher* v. *Eilers Music House,* 77 Or. 70 (150 Pac. 266); *Ladd & Bush* v. *Smith,* 6 Or. 316; *Cunningham* v. *Stockon,* 81 Kan. 780 (106 Pac. 1057, 19 Ann. Cas. 212); *Chaude* v. *Shepard,* 122 N. Y. 397 (25 N. E. 358); *Yuen Suey* v. *Fleshman,* 65 Or. 606 (133 Pac. 803, Ann. Cas. 1915A, 1072).

5–7. This brings us to the question: Was the $2,500 deposited as security for the performance of the covenants or was it under the stipulation of the demise liquidated damages? As a general rule the intention of the contracting parties is an important, if not a conclusive, element in determining whether a sum stipulated to be paid in case of the breach of a contract is to be regarded as liquidated damages or a penalty. Modern authorities attach greater importance to the meaning and intention of the parties than to the language of the clause designating the sum as a penalty or as liquidated damages: *Salem* v. *Anson,* 40 Or. 339 (67 Pac. 190, 91 Am. St. Rep. 485, 56 L. R. A. 169); *Wilhelm* v. *Eaves,* 21 Or. 194 (27 Pac. 1053, 14 L. R. A. 297). The tendency and preference of the law is to regard the stipulation or covenant as of the nature of a penalty rather than as liquidated damages, for the reason that then it may be apportioned to the actual loss sustained and compensation for such loss is the full measure of right and justice. Where the circumstances and the nature of the stipulation are such that the actual damages are not ascertainable with any degree of certainty the

rule stated does not apply. If there is an agreement for a fixed, unvarying sum, without regard to the date of the breach, when in the very nature of things the date of the breach would be all-important in determining the element of actual damages, the stipulation must be held to be one for a penalty: 8 R. C. L., § 114, p. 564; note, Ann. Cas. 1912C, p. 1025. In Section 115 of 8 R. C. L., p. 567, the author states:

"In other words, the damages stipulated for must be such as to amount to compensation only, and if the principle of compensation has been lost sight of the sum named will be treated as a penalty."

8, 9. Especially is this rule if the damages are neither doubtful, speculative, or difficult of proof. It has been held that the party claiming the amount stipulated for as damages must show by evidence *dehors* the contract that the amount so claimed approximates his actual damages: Id., § 117; note, Ann. Cas. 1912C, p. 1025. In the present case it is clear from the agreement that the $2,500 deposited was the property of the lessee and he was to be paid "interest therefor during such time as the lessee shall not be in default for breach of condition or covenant." It must follow that such amount would belong to the tenant until it was in some way forfeited to the landlord. The facts disclosed by the complaint do not indicate any such forfeiture. The lease specifies one certain sum designated in a portion thereof as liquidated damages. It contains covenants for the performance on the part of the lessee of various acts, some of more and some of less importance. The damages accruing from a breach of some of the stipulations, such as the failure to pay for the repair of a water-pipe or the use of water for a month, would be of easy ascertainment. According to the literal terms of the instrument

$2,500 is "fixed and agreed upon as the full measure of demands * * in the event that said lessee, * * shall violate any of the terms, covenants or conditions" of the lease. Possibly some of the stipulations belong to that class which justifies such an arrangement as to damages. From a reading of all the instrument it cannot be believed that a forfeiture of the whole sum was intended or contemplated by the contracting parties for a trivial or technical breach of the agreement, but rather that the money was deposited as security for the performance of the terms of the lease and that they stipulated for a penalty. Under the facts and circumstances disclosed in the case, although some of the language employed strongly evinces a contrary intent, the amount deposited and stipulated for should be regarded as a penalty and not as liquidated damages: *Wilhelm* v. *Eaves,* 21 Or. 194 (127 Pac. 1053, 14 L. R. A. 297); *Yuen Suey* v. *Fleshman,* 65 Or. 606 (133 Pac. 803, Ann. Cas. 1915A, 1072); *Hull* v. *Angus,* 60 Or. 95 (118 Pac. 284); *Carter* v. *Strom,* 41 Minn. 522 (43 N. W. 394); 2 Pom. Eq. Juris., § 443; 1 Sutherland on Damages, § 294; 3 Parsons on Contracts (9 ed.), p. 176; 19 Cent. Law Journal, 282–285.

10, 11. It is stated in the brief that the learned trial judge based his conclusion upon the second point of the demurrer. From a consideration of this phase of the case it appears from the complaint that Philip Gevurtz executed the lease in his own name as "and for" the agent of I. Gevurtz & Sons. The rhetoric of the pleading is not perfect. The faulty use of the word "for" does not leave the allegation meaningless or doubtful. It might subject the pleading to a motion to make more definite and certain, but the same cannot be ignored or held vulnerable to a demurrer es-

pecially when considered with the averment that
I. Gevurtz & Sons paid the money as the deposit, thus
showing that the contract was executed in the transaction of the business of the corporation. The weight
of authority is to the effect that parol evidence is
admissible to charge a principal on a simple contract
not negotiable, where the name of the agent appears
as the principal, and to show that the contract was
executed with intent to bind the principal or for his
benefit: 31 Cyc. 1659; *Barbre* v. *Goodale,* 28 Or. 465
(38 Pac. 67, 43 Pac. 378); *Anderson* v. *Portland Flouring Mills Co.,* 37 Or. 483 (60 Pac. 839, 82 Am. St. Rep.
771, 50 L. R. A. 235); *Riddle State Bank* v. *Link,* 78
Or. 498 (153 Pac. 1192); *Smith* v. *Campbell, post,* p. 420
(166 Pac. 546), filed June 26, 1917. In the absence
of any denial of the facts asserted or other appropriate defense the plaintiffs should recover. It is
contended on behalf of defendant that he is not liable
to anyone upon the assertion of the plaintiffs that
Housman the original lessor accounted to defendant
Banfield for the deposit when the property was conveyed to him. But the allegation of the complaint
goes further than this and sets forth that the defendant to whom the leased premises were sold subject
to the lease, "assumed all the lessor's obligations
thereunder, including the obligation of the said George
A. Housman, the original lessor, with reference to the
repayment of the deposit in said lease provided for."
The word "assumed" in matters of law is "to take
upon one's self." " 'Assume' means to undertake,
engage or promise": 1 Words and Phrases, 586, 587.

12. The complaint, therefore, shows that defendant
agreed to perform the conditions of the lease as to the
deposit. The demurrer to the complaint should have
been overruled; *Strode* v. *Smith,* 66 Or. 163 (131 Pac.

1032).    It follows that the judgment of the Circuit Court must be reversed and it is so ordered.

                                                    REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE MCCAMANT concur.