Norman A. Hoefeld and Helen Pfaelzer, Appellants, v. Sixty-third and Halsted Realty Company et al., Appellees.

Gen. No. 39,019.

Opinion filed March 24, 1937.

LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, of Chicago, for appellants; CHARLES LEDERER, ARCHIE H. SIEGEL and SIGMUND LIVINGSTON, of counsel.

CLAUSEN, HIRSH & MILLER, of Chicago, for certain appellees.

PRITZKER & PRITZKER, of Chicago, for certain other appellee; NICHOLAS J. PRITZKER and RICHARD WEINBERGER, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This was an action brought in the circuit court on a complaint filed by plaintiffs against defendants for an injunction and other equitable relief and a decree was entered in that court dismissing the complaint for want of equity.

In the bill of complaint filed herein plaintiffs, Norman A. Hoefeld and Helen Pfaelzer, allege that one Albert Hoefeld, their father, now deceased, on November 8, 1926, entered into a written contract with George Lenz, Christopher H. Dehning and Peter W. Meyn to purchase a leasehold estate for the sum of $500,000 from the said George Lenz, Christopher H. Dehning and Peter W. Meyn; that said leasehold estate was dated March 6, 1922 and was recorded March 10, 1922, running for a term of 99 years commencing May 1, 1934 and ending April 30, 2033; that the property which was the subject matter of the lease was located at 63rd and Halsted streets in the city of Chicago, Illinois; that the purchaser made a down payment of $125,000, and agreed to pay the balance to the Chicago Title and Trust Company, as trustee, as follows:

$30,000 on the first day of November, 1928;
$30,000 on the first day of November, 1929;
$30,000 on the first day of November, 1930;
$30,000 on the first day of November, 1931;
$30,000 on the first day of November, 1932;
$225,000 on or before the 30th day of April, 1934.

The bill of complaint further alleges that the sellers agreed to transfer by a complete instrument of assignment the leasehold estate created as aforesaid, and all of the sellers' rights, title or interest in and to the building and improvements thereon, to the Chicago Title and Trust Company, as trustee, pursuant to the terms, covenants and conditions of a trust agreement to be executed coincidently with the execution of the agreement of sale; that the parties further agreed that the rights of said sellers and purchaser in and to said leasehold estate, until the full payment of said purchase price is completed, are truly set forth in said trust agreement and that the sellers shall deposit with the Chicago Title and Trust Company, as trustees, a guarantee policy guaranteeing the title in the sellers as of the date of November 8, 1927.

At the same time the contract to sell the leasehold was made, a tripartite agreement was entered into between the parties with the Chicago Title and Trust Company, by which George Lenz, Christopher H. Dehning and Peter W. Meyn, were the parties of the first part; Chicago Title and Trust Company, trustee, party of the second part; and Albert Hoefeld, party of the third part. After reciting that the parties of the first part were the holders of a 99-year leasehold and had sold the same to the party of the third part, Hoefeld, this tripartite agreement sets forth that said third party had agreed to purchase the same for $500,000, the said Chicago Title and Trust Company, party of the second part, agreed to hold the title to the leasehold in trust for the others for the uses and purposes and subject to all of the terms, covenants, conditions, stipulations and provisions as contained in the trust agreement; that said trust company, party of the second part, was to receive from said third party, Hoefeld, the sum of $30,000 on the first day of November, 1928, and a like amount, each, on the first days of

November, 1929, 1930, 1931 and 1932 and the sum of $225,000 on or before April 30, 1934, as the deferred payments agreed to be paid by third party as the complete purchase price of said leasehold estate, and when said sums of money are received by said second party it would pay over to each of the three said first parties one-third of the money so received by the second party. The said trustee, second party, further agreed upon receipt of the full purchase price to assign the said leasehold estate to said third party, the purchaser thereof, Hoefeld, subject to all the conditions and to assume all the promises and covenants in the lease to be kept and performed by the lessee and to be bound personally to comply with them.

The agreement of the trust company further provided that if the said third party, Hoefeld, shall fail to make the first five payments at the time required to be made by said contract and the terms thereof, and such default shall continue for a period of 60 days after the same shall become payable, then the second party shall assign to said first parties the said leasehold estate so acquired by it, and shall deliver to said first parties the original indenture of lease and this trust shall then end; that if the said third party shall fail to pay the sum of $225,000, required to be paid on the 30th day of April, 1934, then the second party shall assign to said first parties the said leasehold estate so acquired by it, and shall deliver to said first parties the original indenture of lease and this trust shall then end. All instalments on the purchase price which shall not be paid when due shall bear interest at the rate of five per cent per annum from the date when same is payable until the same is paid.

The agreement further provided that until there shall be a default in the payments to be made by said second party, that said first parties shall have no interest in the leasehold estate, but only in the funds

derived from its sale, and until the full and complete payment of the purchase price of the leasehold estate by said third party, Hoefeld, he too shall have no interest in said leasehold estate, and is limited to his right to acquire the full and complete ownership of such leasehold estate only upon his paying the purchase price as provided in the original contract at the time specified therein. In the event the third party shall default in the payment of the purchase price as required, the first party shall become repossessed of said leasehold estate by an instrument of assignment from the trustee. The first parties, sellers, may retain all payments which have been made by said third party as part of the purchase price, the same to be retained by said first parties as liquidated damages, it being agreed between the first and third parties that the amount of such payments made by the third party on account of purchase price is compensation to first parties for their refraining from an attempted sale of said leasehold estate and keeping the same off the market, and the said third party shall have no right, title, claim or demand to said fund so paid.

Then follows an agreement that in the event of a litigation involving the trustee, the said first parties will pay all costs and attorney's fees incurred or imposed on the second party in connection with such litigation. Said third party, by joining in the execution of that instrument agreed to pay the sums of money required by him to be paid, as payment of the deferred portion of the purchase price of said leasehold estate when same became due and declared that the terms thereof were in compliance with his contract of purchase of the leasehold estate, by and with the first parties and that the rights of both the first parties and himself are as stated in the agreement. The foregoing to be binding upon and inure to the heirs, personal representatives and assigns of the parties.

The admitted facts show that Hoefeld, the purchaser, paid to the defendants $125,000 in cash at the time said contract was executed and on November 1, 1928, he paid $30,000 in cash to the Chicago Title and Trust Company; that he died testate on August 24, 1929, and that all his rights and interests under said contracts were devised and bequeathed to his widow, Sadie Hoefeld; that said Sadie Hoefeld on November 1, 1929, paid $30,000 to the Chicago Title and Trust Company, trustee, and on November 1, 1930, she paid $30,000 to said Chicago Title and Trust Company, as trustee, and also on November 1, 1931, she paid $30,000 to said trustee; that the total sum paid by Albert Hoefeld, now deceased, and his widow, Sadie Hoefeld, was $245,000; that on January 23, 1932, Sadie Hoefeld assigned all her right, title and interest in said contracts to her two children, Norman A. Hoefeld and Helen Pfaelzer, plaintiffs and appellants herein.

The bill further alleged that Albert Hoefeld during his lifetime did not enter into possession and that the property up to this time had been rented and that none of the rentals was paid to Hoefeld or his widow, or to the plaintiffs; that on January 13, 1934, plaintiffs received a communication from the Chicago Title and Trust Company, trustee, notifying them of the agreement that had been entered into by their father, Albert Hoefeld, with the said Lenz, Dehning and Meyn and stating that on January 20th, they proposed to convey and assign all the trust's right, title and interest in and to said leasehold estate and the buildings and improvements thereon to Sixty-third and Halsted Realty Company, a corporation, in accordance with the terms and provisions of the trust agreement, and in particular the provisions of Articles Third and Fifth thereof, as a result of the default existing in the payment of $30,000 which was due on November 1, 1932. The interest of Lenz, Dehning and Meyn had been

assigned to the Sixty-third and Halsted Realty Company.

The bill further alleges that that part of the contract which provides that all payments which were made by the purchasers shall be retained by the parties of the first part of said contract as liquidated damages, is contrary to public policy; that the only sum due and not paid is $30,000 and prays that the Chicago Title and Trust Company be enjoined from assigning the leasehold estate unless it shall first pay to the plaintiffs the sum of $245,000 or such sum as the court may determine is due as may seem just and equitable. Sixty-third and Halsted Realty Company, a corporation, had become successor by assignment of all the rights, title and interest of Lenz, Dehning and Meyn, the sellers of the lease to Hoefeld.

A motion was made before the trial court to dismiss the said bill of complaint, which motion was overruled, and the court ordered that an answer be filed herein.

Defendants' answer set forth that on February 28, 1934, the Chicago Title and Trust Company, trustee, in pursuance of said trust agreement, sold, transferred, assigned and set over to Sixty-third and Halsted Realty Company, a corporation, that certain leasehold estate hereinbefore described.

The answer further set up that plaintiffs had failed to pay the sum of $30,000 to the Chicago Title and Trust Company on November 1, 1932, and that because of such default for over a period of 60 days after same became due, the agreement under which the original indenture of lease was deposited with the Chicago Title and Trust Company, as trustee, was declared to be at an end and the original indenture of lease was thereafter surrendered to Sixty-third and Halsted Realty Company the successors in interest to the original lessors; that the plaintiffs have at no time offered to pay the sum of $30,000 which became due on Novem-

ber 1, 1932, nor have the plaintiffs offered to pay the sum of $225,000, which was due on or about April 30, 1934.

The answer further admits that no part of the $245,000 paid has been repaid to the plaintiffs and that the plaintiffs are not entitled to the return of any moneys paid pursuant to the terms of the contract.

The answer denies that any of the terms and provisions of said agreement are contrary to public policy and denies that it is inequitable or unconscionable for the defendants, Lenz, Dehning and Meyn to retain the $245,000; denies that the trustee has no right to convey and assign its right, title and interest to the defendant Sixty-third and Halsted Realty Company, without first reimbursing the plaintiffs with the sum of $245,000, and that the trustee acted in pursuance of the demand of the successors in interest of the original lessees and in all respects complied with the terms and provisions of the agreement.

The answer further denies that plaintiffs have an equitable interest to the extent of $245,000, or any equitable interest of any kind in said leasehold and denies that the leasehold at its fair market value today is largely in excess of the total yet due under the terms of the contract.

Thereafter plaintiffs amended their bill of complaint, alleging that it was the intention of the parties to said agreement and the legal effect thereof was the transfer of the equitable title to said leasehold to Albert Hoefeld, since deceased, with a mortgage taken back as part of the purchase price to be thereafter paid and that said transaction was and is in effect an equitable mortgage for part purchase price, and that the rights, titles and interest of the plaintiffs cannot be cut off or defeated by any conveyance made by said Chicago Title and Trust Company, trustee, to said defendants.

Thereafter the defendants were ruled to answer said amended bill and, after their motion to strike had been overruled, they denied all the allegations of said amended bill and adopted their answer heretofore filed to the complaint as their answer to the complaint as amended.

Defendants in their answer deny that the intent of the parties to said agreement and the legal effect thereof was the transfer of the equitable title to said leasehold to Albert Hoefeld; deny that said transaction was in effect an equitable mortgage for part purchase price; deny that the rights, titles and interest of plaintiffs cannot be cut off or defeated by any conveyance made by said Chicago Title and Trust Company, trustee, to said defendants; deny that any assignment or transfer of said leasehold by said Chicago Title and Trust Company would be in direct violation of the statutes of Illinois.

The bill of complaint as further amended alleged that the title to the real estate herein involved became incumbered by the lien for unpaid general taxes in the sum of $51,000; that Goldblatt Bros. Inc., claim to have an interest in said property by virtue of a lease entered into with Sixty-third and Halsted Realty Company, which purported lease was made after the filing of this cause of action.

The evidence shows that Goldblatt Bros. Inc., was made an additional party and filed an answer to the bill which, among other things, alleged that it had no information as to the assignment set forth in paragraph 5 of the complaint. The answer further denied that plaintiffs had an equitable interest in the leasehold estate to the extent of $245,000; admits that the Goldblatt Bros. Inc. was in possession under a lease and denies that the interest of the Sixty-third and Halsted Realty Company is subordinate or inferior to the plaintiff's interest.

Most of the evidence introduced at the hearing was by stipulation. No testimony as to the intent of the parties was offered.

Witnesses testified that the value of the leasehold was between $400,000 and $500,000. Upon the hearing the bill was dismissed for want of equity at plaintiffs' costs.

Plaintiffs contend that the bilateral contract for the purchase of the 99-year leasehold and the tripartite contract and the transfer of the leasehold estate to the trustees, created in the vendors an express vendors' lien for the unpaid purchase price and that such vendors' lien is in fact an equitable mortgage and that the same is void under the statutes of Illinois and that the sellers of the equity should have commenced a suit for the foreclosure of the vendors' lien; that even if the contract did not create an express vendors' lien that the time essence clause in the contracts was waived by not taking action for nearly a year; that the notice of forfeiture by the trustee to plaintiffs was unreasonable and insufficient; that the payments made are agreed and liquidated damages and should be held in equity to be a penalty.

Defendants contend that this was an ordinary contract between vendor and purchaser and that upon default in the payment of any of the unpaid purchase price, the vendors had the right to declare the forfeiture and have the leasehold estate reconveyed to them; that the successors and assigns have the same rights; that the agreement concerning liquidated damages is not a penalty; that there was no waiver of the time essence clause and that the notice given by the trustee of forfeiture was sufficient; that the 99-year leasehold was personal property and not real estate; that the statutory provisions prohibiting the sale or conveyance by mortgagee or trustee upon default in payment, does not apply in the instant case.

In this case the successors to the persons who violated the contract by its terms, filed a bill in a court of equity, asking that an injunction be issued to prevent the other parties to the contract from carrying out the balance of the contract. No charge of fraud, accident or mistake is made in the bill and the prayer contains a rather indefinite request that they should not only be assisted in refusing to carry out their contract, but that the other parties thereto should be compelled to return the money which they had already received, or as much thereof as the court shall deem proper.

Plaintiffs contend that the contract is not what the language says it is, but is something else. The main contention of plaintiffs is that the contract is an equitable mortgage and not what it purports to be. According to the terms of the contract the rights of the parties upon default were definitely fixed by the following language:

" . . . and until the full and complete payment of the purchase price of the leasehold estate by the said third party, at the time in said contract and herein stated, he shall have no interest in said leasehold estate, but his interest is limited to the right to acquire the full and complete ownership of such leasehold estate, upon his paying the purchase price provided in said contract at the time specified therein."

Every contingency that could possibly happen in the future evidently was in the minds of the parties at the time the contract was signed, and was covered by the language of the contract. This very question which plaintiff now raises was anticipated and disposed of by the language above quoted.

Paragraph 5 of the contract provides:

"FIFTH: In the event, that the said third party shall default in the payments of purchase price, as hereinbefore required, then the first parties shall be-

come repossessed of said leasehold estate, by an instrument of assignment from the second party. The said first parties may retain all payment which may have been made by said third party (as part purchase price) as first parties' liquidated damages, it being hereby agreed between the first and third parties that the amount of such payments made by the third party on account of purchase price is compensation to first parties for their refraining from an attempted sale of said leasehold estate and keeping the same off the market, and the said third party shall have no right, title, claim or demand to said fund so paid.''

This language quite effectually disposes of the prayer for the return of the money.

The eighth paragraph of the contract provides:

'' . . . The said third party, . . . does hereby declare that the terms hereof are in compliance with his contract of purchase of the leasehold estate, . . .'' This paragraph shows that plaintiff knew the contents and terms of the contracts and the legal effect of signing same.

Courts of equity have no power to substitute a different contract in the place of the one actually made, but will presume the interest of either party to the contract is expressed in the language thereof. Express words are not required to create an equitable mortgage where the intention to create such a lien is evident, but it must clearly appear from the instrument, or the surrounding circumstances at the time of the entering into the same, that the maker of the instrument intended the property therein described to be held, given or transferred as security for the obligation. *Hibernian Banking Ass'n v. Davis*, 295 Ill. 537, 538.

In the instant case no evidence was introduced showing that, at the time of the signing of these contracts, there was any intention to do otherwise than the lan-

guage of the contract implied. It is a contract to purchase, a 99-year lease to be delivered under certain circumstances and to deliver same upon the completion of the payments, otherwise, the said lease of the property is to be returned to the seller. We do not believe that it has been shown that the elements of an equitable mortgage appear from these circumstances.

The contract further provides that if the purchaser should fail to complete his payments, the amount that he paid should be retained by the seller as liquidated damages, and reads as follows: "The said first parties may retain all payments which may have been made by the said third party (as part purchase price) as first parties' liquidated damages, it being hereby agreed between the first and third parties that the amount of such payments made by the third party on account of purchase price is compensation to first parties for their refraining from an attempted sale of said leasehold estate and keeping the same off the market, and the said third party shall have no right, title, claim or demand to said fund so paid. . . . " There is nothing ambiguous or equivocal about this language. It is plain and fully states the rights of the parties as they understood them at the time the contract was entered into.

Counsel for appellant calls attention to the fact that the court should take judicial notice of the financial depression through which the country has just passed, intimating that because of that the contract should not be enforced as written, but that the money that has been paid should be returned. No evidence has been offered that plaintiffs were affected by the depression or were unable to pay the amount due.

In *Keogh v. Peck*, 316 Ill. 318, at page 325, the court said: "The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their

evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear. (*Miedema v. Wormhoudt,* 288 Ill. 537.) In considering the fairness or hardship of a contract the usual rule is to decide those questions with reference to the time when the contract was made, unless the delay in carrying it out is caused by the person seeking performance. The mere fact that the value of the property contracted for has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith. *Anderson v. Anderson,* 251 Ill. 415."

No evidence was introduced in this case to show that the purchaser was overreached or that he had in any way been deceived or that a mistake had been made as to the amount stipulated as liquidated damages.

In *Weiss v. United States Fidelity & Guaranty Co.,* 300 Ill. 11, the court said:

"The burden of proof in such case is on the defendant to show that the contract provided for a penalty and not for liquidated damages, where there is nothing upon the face of the contract that requires the court to make the legal finding that the provision is for a penalty. Such a contract is *prima facie* evidence that the parties have stipulated and agreed on the actual amount of damages that ought to be recovered for a breach, and in the absence of evidence to the contrary the damages will be held to be liquidated damages. *Selby v. Matson,* 137 Iowa, 97; *Harper v. Tidholm,* 155 Ill. 370."

In these contracts, time was the essence thereof and as was said in the case of *Montana Wheat Land Co. v. Danaher,* 225 Ill. App. 364, at pp. 372, 373 (affirmed in 308 Ill. 620): "The parties agreed that time was of

the essence of the contract, and under such circumstances a court of equity cannot relieve a purchaser who has forfeited his rights under the contract, where no fraud, accident or mistake has intervened.''

Nothing could be gained by answering in great detail the various questions raised by the counsel in this case. As we view the situation, this is a simple contract, a saleable leasehold which was to be delivered upon the completion of the purchase price. It was definitely agreed that neither party should have any interest in the subject matter excepting on behalf of one, the right to receive the money, and, on behalf of the other, the duty to pay and at the completion of such payments the contract would be consummated. The contract anticipated that a default could occur and made a provision as to what should be done in that event. The contract further anticipated the question of damages that might be suffered by the seller, especially concerning withholding the sale of same from the market, and provided therefor. There is no offer on the part of the plaintiffs to do equity, although confessedly they are in default according to the terms of the contract and still owe money on account of such default. Parties who seek the aid of a court of equity must allege and prove that they are not the cause of the situation of which they complain. It should be borne in mind that at no time did Hoefeld obtain any title in or right to possession of this property as this could not be accomplished until full payment was made. The various agreements which were entered into were more in the nature of conditional sales contracts with no right to possession, by the purchaser, or otherwise, until full payment had been made in compliance with the terms of the contract.

In order to grant the plaintiffs the relief which they ask, it would be necessary to make a new agreement

between the parties which is not one of the functions of a court of equity.

We are of the opinion that the chancellor of the circuit court was right in his decision and the decree of that court is hereby affirmed.

*Decree affirmed.*

HEBEL and HALL, JJ., concur.