CANADIAN MINING COMPANY *v.* CREEKMORE, ET AL.

5-1053                                    295 S. W. 2d 357

Opinion delivered November 19, 1956.

*Bethel & Pearce* and *Lawson Cloninger,* Ft. Smith, for appellant.

*Kay Wilson, Jr.,* and *Hill, Fitzhugh & Brizzolara,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellees, L. B. Creekmore and wife and Claude J. Pierce and wife, filed separate actions against appellant mining company on separate lease contracts on their respective interest in a fifty acre tract of land in Oklahoma. The interest of the Creekmore's was a one-eighth interest and that of the Pierce's a one-sixteenth interest. The Creekmores sought to recover $637, plus $1 a day from November 4, 1955 until judgment, alleged to be due under the terms of the lease contract and the Pierces sought a similar amount under their lease. The trial court consolidated the two suits and by agreement a jury

was waived and trial had before the court which resulted in judgments for appellees for the amounts prayed. There was no testimony introduced at the trial. There were before the court only the pleadings, the lease contracts as exhibits thereto, and concessions of the parties made at a pre-trial conference. The lease contracts involved are identical in material parts. Material provisions were: ''1. This lease (Creekmore's) shall be in full force and effect for a term and period of five years from and after the date hereof, and as much longer as coal may be profitably produced, unless terminated sooner under its provisions. 2. Lessee agrees to commence operations on said land within one year from the date hereof, or, in lieu thereof, to pay to lessor annually, on or before the 18 day of August 1954, this operation shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, . . . the sum of $5.00 per acre or $50.00 ($25.00 in the Pierce's lease) which shall operate as a rental and cover the privilege of deferring the commencement operations for twelve months from said date. In like manner and upon like payment or tenders the commencement of operations may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the aown payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred. 3. Lessee agrees to pay to the lessors upon all coal mined, removed and sold from these premises a royalty of twenty-five cents per ton of 2,000 pounds, . . . provided that minimum royalties which may have been advanced at the rates per acre herein set forth shall be credited on royalty due for coal mined and sold . . . 5 . . . it shall be within the discretion of lessee to determine the rate and extent of production, inasmuch as such operation shall include other lands adjacent to or nearby, and it is agreed hereby that lessee shall not be obligated to maintain any minimum production requirements, or operate continuously once opera-

tions are commenced so long as the advance royalty payments set forth in Clause 2, above, are made . . . 8. In case lessee discontinues operations on the lands under this lease for a period in excess of 60 days consecutively at any one time then said lessee is to pay said lessor L. B. Creekmore ................... $1.00 per day for each and every day in excess of 60 days that operation on said lands are discontinued. Said charges are to cease whenever operations are resumed. 9. The right is hereby conferred upon lessee to cancel this lease upon thirty (30) days' written notice when the operation of removal of coal therefrom shall in his judgment become unprofitable and lessee shall be the sole judge as to when same is unprofitable.''

For reversal appellant relies on these points: ''1. The lessee was excused by payment of advance rentals under Paragraphs 2 and 5 of the lease from continuous operations. 2. Paragraph 8 of the lease provides for a penalty and is void and unenforceable. 3. Plaintiffs cannot recover because no actual damages were alleged.''

The leases here were executed in Oklahoma, therefore, the laws of that state govern their construction. It is undisputed that appellant ceased mining operations on the property involved on December 7, 1953 and thereafter on December 1, 1955, gave notice to appellees canceling both leases. When the separate paragraphs of these lease contracts are considered together, as we must, we have concluded that there are no conflicts in any of their provisions and that they are clear and unambiguous. The primary and decisive question presented is whether Paragraph 8, when considered along with Paragraphs 2 and 5, imposes a penalty against appellant and therefore is void and unenforceable under the Oklahoma laws, or does it provide for liquidated damages or additional rental, which would make it valid, as appellees argue. The laws of Oklahoma provide: ''Title 15, Sec. 213. Penalties Void. Penalties imposed by contract for any nonperformance thereof, are void. But this Section does not render void such bonds or obligations, penal in form, as have heretofore been commonly used;

it merely rejects and voids the penal clauses. R. L. 1910, Section 974.

"Title 15, Sec. 214. Attempt to fix damages void except as provided. Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section. R. L. 1910, Section 975.

"Title 15, Sec. 215. Amount presumed to be damages, provision for. A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage. R. L. 1910, Section 976."

We hold that the burden was on appellant to show that a penalty was imposed on it by Paragraph 8 above when considered with Paragraphs 2 and 5, and that the $1 per day required to be paid by appellant to appellees for each day in excess of any sixty day period that operations on the land were discontinued was not intended to be and did not amount to liquidated damages or additional rental. We hold that appellant has not met this burden. As indicated, appellant was content to offer no evidence at all on this issue, or in the case. Only a question of law was presented for the court to be determined from the language and subject matter of these lease contracts and the intent of the parties.

Under Paragraph 2, if Paragraph 8 is ignored or unenforceable, then appellant had the right to dig a small amount of coal (or any amount) and thereby tie up the property involved for a period of five years by paying only the rental of $50 per year on the Creekmore lease and $25 per year on the Pierce lease. The trial court might well have found, and evidently did find in effect, that the $1 per day required under Paragraph 8 was no more than at least a part of the royalties to be paid to

appellees for each ton of coal mined under Paragraph 3 by appellant, and which appellees would have received had the mine on the leases been operated, and that this $1 per day bore a fair relation to the damages contemplated for all idle days in excess of 60 when the mine did not operate, and was either liquidated damages actually sustained or rental on the land. Courts abhor penalties.

The Supreme Court of Oklahoma in *Southern Motor Supply Co.* v. *Shelburne Motor Co.*, 172 Okla. 495, 46 Pac. 2d 562, reaffirmed its holding in *McAlester* v. *Williams*, 77 Okla. 65, 186 Pac. 461, wherein it construed the above sections of the Oklahoma statutes and used this language: ''The question whether the amount stipulated to be paid upon failure of performance is to be treated as liquidated damages or as a penalty is, in its last analysis, still a question of law for the court, to be determined from the language and subject-matter of the contract, the evident intent of the parties, and all the facts and circumstances under which the contract was made. It would serve no useful purpose to review the numerous decisions of this court relating to this proposition, for, as hereinabove suggested, each case is determinable by the facts involved. The more recent trend of the decisions, however, is well stated in the case of *Larabee Flour Mills Co.* v. *Carignano* (C. C. A.) 49 F. 2d 151, 154: 'Furthermore, there is a distinct trend toward a relaxation of the rules as to liquidated damages. Courts have always abhorred penalties, and have looked closely to see that penalties were not masquerading as liquidated damages. And if the stipulation is in fact a penalty — if it bears no fair relation to the damage contemplated — it will not be enforced, no matter what it may be called. And if there is available an accurate and readily ascertainable method of fixing the damages, courts will assess the damages accordingly. In the complexities of modern business, breaches of contract involve more incidental but real damage than when business was less complicated; in later years, businessmen and associations of businessmen have been more desirous of contracting as to damage, in order that

their liability may be a known rather than unknown quantity. Responding to these changing conditions in the business world, the courts have been much less reluctant than formerly to enforce provisions for liquidated damage.' ''

In its earlier opinion above referred to, 186 Pac. 461, the court had this to say in construing these same sections of the Oklahoma statutes: ''Where the amount of the damages for the breach of a contract is uncertain and difficult of ascertainment, and the agreement discloses the intention of the parties to fix a sum certain as the liquidated damages, the contract will be enforced. The same rule is stated another way by the Circuit Court of Appeals of the Eighth Circuit in *Pressed Steel Car Co.* v. *Eastern Ry. Co. of Minnesota,* 121 Fed. 609, 57 C. C. A. 635, as follows: 'When it is certain that some damages will result from delay in the performance of a contract, when those damages are incapable of exact ascertainment, or are based upon matters that are to a considerable degree uncertain, and when the amount stipulated is not, on the face of the agreement, out of all proportion to the probable loss, a contract to pay a sum certain for each day, week, or other definite period of delay beyond the time fixed by the contract for its fulfillment is a valid and enforceable agreement for the measurement of the damages, and is not a contract for a penalty.' ''

We conclude, therefore, that the judgment of the trial court is correct and should be, and is, affirmed.