No. 18,958.

WILLIAM J. CHISHOLM *v.* CHARLES WILLIAM REITLER, ET AL.

(352 P. [2d] 794)

Decided June 6, 1960.

Mr. KENNETH C. EGAN, for plaintiff in error.

Mr. JOHN E. HOLM entered an appearance for defendants in error but filed no brief.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error was plaintiff below in an action for breach of contract to purchase land in which he sought to recover the down payment paid by his assignor, one Ray Vaughn. The trial court, sitting without a jury, found in favor of the defendant and entered a judgment dismissing plaintiff's complaint. Plaintiff seeks review of this judgment of dismissal.

Plaintiff's assignor, Vaughn, was a builder in the Denver area. The defendant Reitler was a real estate broker and an officer in the La Vada Improvement Co., the developer of a residential subdivision in Arvada, Colorado, a suburb of Denver. On February 11, 1957, Vaughn entered into an agreement to purchase Lot 2 in Block 1 of the subdivision from the La Vada Improvement Co. Vaughn did not testify at the trial, but according to Reitler's testimony the reason that Vaughn purchased Lot 2 was that Vaughn who had constructed a house on the lot adjoining Lot 2, had violated the building regulations of Arvada by building too close to the side line of his lot. This error made it necessary that any house built on Lot 2 be narrower than it could have otherwise been. It thus appears that plaintiff's assignor agreed to purchase Lot 2 in order to compromise the dispute which arose following Vaughn's building too close to the lot line on the lot adjoining that in question. The contract called for payment of $2375.00 and plaintiff made a 50% down payment. The following provisions of the contract must be considered on this review:

"Upon payment or tender as above provided and compliance with the other terms and conditions hereunder by purchaser, the seller shall execute and deliver a good and sufficient *general* warranty deed to said purchaser on or before *April 29, 1957,* conveying said property free

and clear of all taxes, liens, and encumbrances, except *no exceptions other than general taxes for 1957* and except the general tax for *1957,* payable January 1, *1958."*

"(Title Policy at *seller's* expense) shall be furnished the purchaser on or before *date of closing,* 19.....*"*

"Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered or performed by purchaser as herein provided, then this contract shall be void and of no effect, and both parties hereto released from all obligations hereunder, and all payments made hereon shall be retained by the undersigned agent as liquidated damages;" (Italics indicate material typed in on printed form).

Reitler testified that a title insurance policy had been issued for the entire subdivision but that no policy specifically covering Lot 2 was in existence. His further testimony established that he had sought to close the deal and to arrange a closing date, but that Vaughn had not had sufficient money to pay the balance due on the contract. On one occasion defendant extended the time at Vaughn's request. Defendant also testified that he had always been and was still ready, willing and able to perform the contract. On June 10, he wrote to Vaughn stating that unless payment was tendered within 10 days the agreement would be cancelled and the down payment forfeited. Some time later, on February 4, Vaughn demanded return of the down payment. Following defendant's refusal to comply with this demand, he assigned his rights to the present plaintiff who commenced the action on March 18, 1958.

The trial Judge, after indicating that he was disposed to decide the matter for the plaintiff, took it under advisement and later entered findings and judgment for the defendant. The court's reasons were that the purchaser could not rescind the contract because he had never tendered payment of the balance of the purchase price as a consequence of which defendant was never in

default. The court concluded that the defendant was not required to tender the title insurance policy until the date of closing.

Defendant makes no appearance in this Court and the only brief filed is that of the plaintiff. He argues that the trial court erred in its construction of the contract; that it should have held that defendant was under an obligation to furnish a title policy within a reasonable time — *prior* to the date of closing; that its failure to do so constituted a default justifying the rescission. A further argument of the plaintiff is that the judgment of the trial court authorizing defendant to retain one-half of the purchase price deposited as a down payment constitutes enforcement of a penalty.

Was the defendant in default as a result of his failure to submit a title policy commitment within a reasonable time prior to the closing? We think not for the following reasons:

*First*, the fact that the plaintiff's assignor was an unwilling buyer of this property and he was unable to come up with the balance of the purchase price to complete the transaction, furnishes a sufficient answer in and of itself to the plaintiff's argument. There is no showing that defendant refused to furnish evidence of the sufficiency of title. On the contrary, all of the evidence indicates that the failure of the transaction was attributable to the default of the vendee—his non-tender of the balance of the purchase price. The finding of the court in this regard is fully supported by the evidence.

*Second*, defendant was not in technical default because under the terms of the contract he was not required to produce evidence of merchantability of his title in the form of a policy or commitment until the actual closing date. The plaintiff argues that a sensible interpretation of this provision of the contract requires that the tender of merchantable title be made within a reasonable time before the closing. If the vendor had

undertaken to furnish an abstract of title for examination, this argument would be more meaningful because it would then have had to have been furnished for examination prior to the closing. *Allison v. Schuber,* 74 Colo. 545, 223 Pac. 53. In that case, the contract was not specific as to the date of furnishing an abstract showing merchantable title and the Court held that a reasonable time was required. In the present situation, however, the contract is specific in that the seller is required to furnish a title policy *on* or *before* the time of closing. Defendant is not shown to have been in violation of this provision.

The principle that a vendor must furnish, apart from contract, an abstract of the muniment upon which he relies to prove his title is not generally followed in the United States and thus this question is subject to the particular contractual provision. See 1 *Patton, Titles* 137, sec. 42, *Duty to Furnish Abstract.*

■ The other question raised by plaintiff: whether the amount paid by his assignor and retained by defendant as liquidated damages actually constitutes a penalty. The defendant's version is that it was necessary to make this provision because the lot would have to be sold for less money due to Vaughn's error in building too close to the side line of the adjoining lot. He said that he required this unusually large deposit from Vaughn so that if the latter did not comply with the contract, he, the seller, could sell the land for less and still come out whole. There is a dearth of evidence in the record on behalf of the plaintiff tending to contradict this position. For example, there is no evidence to establish loss suffered as a result of the error. Moreover, there is no evidence as to what the usual deposit would be. Consequently, we are not justified in holding that the amount deposited is, on its face, a forfeiture. One who asserts that liquidated damages are penal must prove that fact. See *Weiss v. United States Fidelity & Guaranty Co.,* 300 Ill. 11, 132 N.E. 749; *Canadian Mining Co. v. Creekmore,*

226 Ark. 980, 295 S.W. (2d) 357; 25 C.J.S. *Damages*, Sec. 144.

The judgment is affirmed.