Argued June 7, reversed and remanded October 21, 1976

# CHAFFIN et ux, *Appellants,*
## *v.*
# RAMSEY, *Respondent.*
555 P2d 459

[ 429 ]

*Kenneth E. Shetterly* of Hayter, Shetterly, Noble & Weiser, Dallas, argued the cause and filed a brief for appellants.

No appearance contra.

O'CONNELL, J.

## O'CONNELL, J.

This is an action brought by the vendors against the vendee to recover damages for breach of a land sale contract. The case was tried to the court without a jury. The court awarded damages in an amount less than that prayed for, and plaintiffs appeal.

On November 19, 1973, the parties signed an instrument entitled "Purchase Receipt and Agreement of Sale," by the terms of which defendant agreed to purchase real property consisting of 57 acres of land on which was located a covered horse arena, a four-bedroom house, a two-bedroom house, and a storage barn. The contract also included personal property consisting of a tractor, a baler, a mower and other farm equipment. The total purchase price was $130,000. Defendant paid $1,000 down and agreed to pay $34,000 on or before January 1, 1974. The balance was due in installments over a period of 12 years. The contract contained a provision making either party liable for ten percent of the sale price in case of breach. Defendant failed to perform and, in April 1974, plaintiffs brought this action to recover ten percent of the sale price or, in the alternative, $15,000, which was alleged to be the actual damages. The trial court awarded plaintiffs damages in the amount of $4,085, representing a loss of rental, and escrow and attorney's fees incurred by plaintiffs.

In denying recovery of ten percent of the sale price, the court explained that the "liquidated damages clause is unenforceable as not bargained for and not a reasonable forecast of just compensation when actual damages could have been ascertained."

The trial court's finding has the effect of categorizing the agreement to pay ten percent of the sale price in case of breach as a provision for a "penalty" rather than as a provision for "liquidated damages." In order for such a clause to be construed as one for liquidated damages, the sum provided, at the time of the making of the contract, must seem to bear a reasonable

[ 431 ]

relationship to anticipated damages and the actual damages must be difficult or impossible to ascertain. *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203, 206 (1965).

It can be argued that any agreement made between two parties should be given the effect intended by them unless the type of agreement entered into is in its nature likely to be oppressive and unfair because the promisor is not in a position to freely bargain with the promisee.[1] Where neither party to an agreement has an advantage over the other in pressing for favorable provisions in making the bargain, there would seem to be no moral precept or social consideration which would call for a judicial repudiation of the agreement merely because the damages could be readily ascertained in advance or because the amount of damages fixed by the contract is admittedly greater than the actual damages the parties might possibly suffer. This view would still leave for judicial scrutiny those cases where the promisor is a party to an adhesion contract prepared by the promisee, or where the promisor is a borrower and thus exposed to oppressive exactions, or in other types of cases where the principle of freedom of contract is outweighed by stronger countervailing policy considerations.

■■ If one were to accept the foregoing reasoning, a provision for liquidated damages would be valid even though the damages agreed upon were disproportionate to the probable loss. To our knowledge, no court has carried the principle of freedom of contract that far.[2] And it is not necessary for us to take that step in

---

[1] *Cf.,* McCormick on Damages 605, § 148 (1935).

[2] In cases involving the sale of land, stipulations by the vendor to pay a certain sum as liquidated damages in case of breach, even though large, have long been recognized as valid. *See,* Anno., Stipulation in Land Contract for Payment of Specified Sum by Vendor in Case of Default as Provision for Liquidated Damages or Penalty, 48 ALR 899 (1927), and cases cited therein. For example, a contract clause providing $2,000 for liquidated damages was upheld when the vendor could not convey the property which was worth $14,000. *Norris v. McMechem,* 135 Misc 361, 238

the present case, because in our opinion plaintiff proved that the damages agreed upon bear a reasonable relation to the loss which might have been foreseen at the time of the execution of the contract, and the actual damages would have appeared difficult to ascertain.

■ In making a forecast of possible damages attendant upon breach, both plaintiffs and defendant could reasonably be expected to take into account the fluctuating value and price of land. From the seller's standpoint, the danger of a fall in the market value of land would be an important factor in predicting his possible loss upon the buyer's default. Correspondingly, a rise in the market value of the land would similarly affect the buyer if the seller could not perform.

■ The property involved in this case was devoted to an unusual type of use, the purchase of which would probably be of interest to a limited number of persons. It therefore would present a difficult problem of calculating its probable market value, and the loss which would result from a failure to perform the contract. In addition to the possible loss of bargain to either buyer or seller, the parties in the present case could have reasonably contemplated consequential

NYS 181 (Sup Ct 1930). In cases where the purchaser has breached the contract, vendors also have been permitted to recover relatively large sums by retaining the forfeited down payments or installment payments. McCormick on Damages 615-16, § 153 (1935); 5 Corbin on Contracts § 1075 (1963). In the case of deposits it has been suggested that there may be a distinction between an actual payment of money and a promise to pay. McCormick on Damages 615, § 153 (1935). In one case in which the purchaser stopped payment on checks totalling ten percent of the sale price, the court allowed the vendor to collect the same sum. The court stated that the only distinction between retaining the deposit and obtaining a judgment was the method of collection. *Tudesco v. Wilson,* 163 Pa Super 352, 60 A2d 388 (1948). Where installment payments are forfeited, account must be taken of the rental value of the land in calculating the amount of the vendor's loss. Under Oregon cases, the vendee is entitled to a foreclosure sale if he can show the likelihood of the sale bringing an amount greater than the balance owing on the contract. *Blondell v. Beam,* 243 Or 293, 413 P2d 397 (1966); *McCracken v. Walnut Park Garage, Inc.,* 156 Or 697, 68 P2d 123 (1937).

damages as a result of the loss of income from the rental properties which were included in the sale. The trial court found that the loss of lease payments on the horse barn amounted to $3,600 and that the loss of the house rentals amounted to $375.00. The court added to this, $110.00, representing escrow and attorney's fees. Although the actual loss incurred is not the test for judging the validity of the provision for agreed damages, it demonstrates how particular kinds of losses can occur and thus indicates the reasonableness of a prediction that includes the possibility of such losses. Since it is the prediction rather than the actual loss by which the agreed damages are tested, the inquiry in the present case is whether the parties could have reasonably anticipated a longer period during which the property would remain unrented and therefore give rise to loss of rentals greater than that actually suffered in this case. We can find no basis for saying that the parties could not have reasonably expected such a condition to occur.

■■ As we noted in *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965), "[t]he decision of penalty or liquidated damages is one of law for the court * * *." In our previous cases we have deemed it essential that there be evidence bearing upon the two elements necessary to sustain a provision for liquidated damages, showing (1) that actual damages are difficult to estimate, and (2) that there must be a reasonable relation between the damages agreed upon and the loss which might have been foreseen. There is a division of authority as to whether the plaintiff or the defendant has the burden of proof on this question. In some states the burden is imposed on the plaintiff.[3] In

---

[3] *E.g., Better Food Markets v. American Dist. Tel. Co.,* 40 Cal2d 179, 185, 253 P2d 10, 14 (1953); *Bowbells Pub. School Dist., No. 14 v. Walker,* 231 NW2d 173, 178 (N.D. 1975); *Massey v. Love,* 478 P2d 948, 950 (Okla 1971); *Waggoner v. Johnston,* 408 P2d 761, 768 (Okla 1965). *Contra, Canadian Mining Co. v. Creekmore,* 226 Ark 980, 983, 295 SW2d 357, 360 (1956).

Many of the cases impose the burden of proof on the plaintiff because of

other states, the defendant has the burden.[4] In Oregon the burden has been placed upon the plaintiff,[5] although in the recent case of *Wright v. Schutt Construction Co.,* 262 Or 619, 629, 500 P2d 1045 (1972), the question is treated as still open for decision, the court saying:

"* * * [W]e need not decide in this case whether, in the usual case, the plaintiff may have the burden to offer evidence to sustain such a payment as one of liquidated damages, rather than as a penalty, or whether the defendant may have the contrary burden."

This willingness to treat the question as open in the face of our previous acceptance of the rule imposing the burden of proof on the plaintiff, is explained in the court's recognition of the shift in attitude toward

a statute requiring that interpretation. *See, e.g.,* Calif Civ Code §§ 1670; 1671; No Dak Cen Code § 9-08-04; 15 Okl St § 214, 215. Such a rule has not escaped criticism. In Sweet, *Liquidated Damages in California,* 60 Calif L Rev 84, 143-44 (1972), the author suggests that "[t]o give maximum effect to liquidation clauses in negotiated contracts and to avoid the expenditure of unnecessary judicial energy, California pleading and procedure rules should be changed. Rather than require the party relying upon the clause to plead and prove compliance, the party seeking to avoid the clause should be required to persuade the court that the amount selected will not fall within the range of estimated actual damages * * *."

[4] *E.g., Korshoj Constr. Co. v. Mills County, Iowa,* 156 F Supp 138, 139 (S.D. Iowa 1957); *Manufacturers Casualty Ins. Co. v. Sho-Me Power Corp.,* 157 F Supp 681, 684 (S.D. Mo. 1957); *Harbor Island Spa, Inc. v. Norwegian America Line A/S,* 314 F Supp 471, 474 (S.D. N.Y. 1970); *Chisholm v. Reitler,* 413 Colo 288, 292, 352 P2d 794, 796 (1960); *Jobe v. Writer Corp.,* 34 Colo App 240, 526 P2d 151, 152 (1974); *Howard v. Bar Bell Land & Cattle Co.,* 81 Ida 189, 197, 340 P2d 103, 107 (1959); *Hoefeld v. Sixty-Third & Halstead Realty Co.,* 289 Ill App 305, 318, 7 NE2d 402, 408 (1937); *Selby v. Matson,* 137 Iowa 97, 100, 114 NW 609, 610 (1908); *Perma-Stone Bi-County Corp. v. Ackerman,* 15 Misc2d 640, 182 NYS2d 655, 657 (Sup Ct), *aff'd.,* 8 App Div2d 731, 187 NYS2d 991 (1959); *Knoblauch v. Little Falls Dairy Co.,* 241 App Div 910, 272 NYS 31, 32 (1934); *Silver Dollar Club v. Cosgriff Neon Company,* 80 Nev 108, 112, 389 P2d 923, 925 (1964). *Contra, Wilson v. Clarke,* 470 F2d 1218, 1223 (1st Cir 1972).

[5] *Salem v. Anson,* 40 Or 339, 345, 67 P 190 (1902); *Hull v. Angus,* 60 Or 95, 105, 118 P 284 (1911); *Alvord v. Banfield,* 85 Or 49, 58, 166 P 549 (1917); *Learned v. Holbrook,* 87 Or 576, 585, 170 P 530, 171 P 222 (1918); *Secord v. Portland Shopping News,* 126 Or 218, 224, 269 P 228 (1928); *Lanham v. Reimann,* 177 Or 193, 198, 160 P2d 318 (1945); *Babler Bros., Inc. v. Hebener,* 267 Or 414, 419-20, 517 P2d 653 (1973), and *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975).

[ 435 ]

liquidated damages provisions. Thus we said, in the *Wright* case:

> "* * * [M]uch of the hostility formerly expressed by courts to provisions for liquidated damages has moderated in recent years as the courts have come to recognize that contract provisions for liquidated damages, under proper limitations, can save the time of the courts, as well as of the parties, and also reduce the expense of litigation."[6]

■ If we were to accept this modern view which recognizes that parties should be entitled to freely contract with each other and be bound by their agreements in the absence of proof of oppressive or "adhesive" circumstances, the burden of proof would fall upon the defendant to show that a liquidated damage provision did not meet the two requirements previously mentioned.[7] But it is unnecessary for us to decide at this time whether we should repudiate the rule previously recognized, placing the burden of proof upon the plaintiff, because even if we were to hold that plaintiff has that burden, the evidence which he adduced was sufficient to meet it in this case.

The cause is remanded with directions to enter a judgment for plaintiffs in the amount of $13,000.00.

**TONGUE, J.,** dissenting.

The majority holds that the provision of the contract between the parties for 10 percent liquidated damages (or $13,000) was a valid contract provision because plaintiffs offered sufficient evidence to prove that "the damages agreed upon bear a reasonable relation to the loss which might have been foreseen at the time of the execution of the contract, and the actual damages would have appeared difficult to

---

[6]262 Or at 622, citing *Secord v. Portland Shopping News,* 126 Or 218, 225, 269 P 228 (1928) and *Medak v. Hekimian,* 241 Or 38, 45, 404 P2d 203 (1965).

[7]For the arguments in favor of this modern approach, see McCormick on Damages § 157 (1935); Note, *Liquidated Damages as Prima Facie Evidence,* 51 Ind L J 189 (1975); Sweet, *supra* note 3.

ascertain." The majority then goes on to discuss whether plaintiffs should have had the burden to prove that these requirements were satisfied or whether the defendant should have had the burden to prove that they were not satisified.

1. *Plaintiffs had the burden of proof on liquidated damages.*

The majority recognizes that under our previous decisions "the burden has been placed upon the plaintiff," but seems to advocate the repudiation of those decisions and the adoption of what the majority refers to as "the modern view" to the contrary, based upon the concept of "freedom of contract," although stating that "it is unnecessary for us to decide [this question] at this time * * *" because plaintiffs offered sufficient evidence to satisfy their burden of proof under the existing rule in Oregon.

Whether plaintiff or defendant has the burden of proof on the issue of liquidated damages is an important question and one which was not an issue in this case. It was not discussed by either party by brief or in oral argument. It follows, in my opinion, that it is inappropriate, if not improper, for a majority opinion of this court to raise that issue, *sua sponte,* and to propose or suggest that the rule of previous decisions of this court on that question be repudiated. Such a discussion and proposal would be entirely proper on a concurring or dissenting opinion, but not, in my view in a majority opinion when neither party has had an opportunity to be heard upon that proposal, as in this case.

It is also my opinion that the rule as presently adopted by the previous decisions of this court should not be repudiated because it is not only a good rule, but one that is supported by the majority of courts, as well as by "modern authority."

In support of what it characterizes as the "modern approach" the majority refers to arguments as stated

in McCormick on Damages § 157, published in 1935, and in Note, Liquidated Damages as Prima Facie Evidence, 51 Ind L J 189 (1975), which recognizes (at 198) that "courts have not allocated the burden of proof" in the manner proposed by the writer of that law review note and as now proposed or suggested by the majority of this court.

It is true that there is some conflict in the decisions by other courts on this subject, particularly those decided prior to the adoption of the Restatement of Contracts § 339, in 1932. See Annot., 138 ALR 594, 598-600 (1942), and 5 Williston on Contracts 759-64 § 788 (1961). It has been stated, however, as in *McCarthy v. Tally,* 46 Cal 2d 577, 297 P2d 981, 986 (1956), that:

> "The general rule in the United States with respect to provisions for liquidated damages appears to be that the plaintiff must plead and prove that at the time the contract was entered into damages in the event of a breach of the contract would be difficult of ascertainment; that the sum agreed upon represented a reasonable attempt to ascertain what such damages would be; and that a breach of the contract had occurred."

Among other cases to the same effect, and one which specifically discusses the problem in terms of the requirements of the Restatement § 399 (the rule adopted by this court), see *Wilson v. Clarke,* 470 F2d 1218, 1223 (1st Cir 1972), in which that court, in affirming the denial of plaintiff's claim for enforcement of a contract provision for liquidated damages, stated that "plaintiff had the obligation of demonstrating some basis upon which, when the formula was fixed, it could be said to be a reasonable forecast of damages."

Some states have, by statute, adopted a rule with requirements similar to those of Restatement § 339. The court applying those statutes have also held the burden of the proof upon the question whether contract provisions for liquidated damages satisfy those

[ 438 ]

requirements to be upon the party asserting the claim for damages.[1]

It has also been stated in 5 Corbin on Contracts 361, § 1062 (1962), a most highly respected and "modern authority," that the rule as stated in these cases, applying requirements for allowance of liquidated damages similar to those stated in Restatement § 339, and imposing the burden of proof upon the claimant of liquidated damages to establish that those require- ments have been satisfied, is "a just and reasonable rule, even in the absence of statute."

Corbin also discussed the concept of "freedom of contract" as applied to contract provisions for liquid- ated damages (as advocated by the majority), as follows:

> "The pendulum of judicial opinion shifts between two extremes, one holding that the public interest requires frequent refusal to enforce agreements, and the other that freedom of contract is the paramount public policy. However, no judge advocates the enforcement of all agreements and the total abandonment of the public policy test. * * *" 5 Corbin on Contracts 335, § 1057 (1964).

Indeed, there is nothing new about the concept of "freedom of contract," which provides the basis for what the majority characterizes as the "modern approach" to this problem.

As previously noted, Corbin, after weighing these conflicting considerations, advocates as "a just and reasonable rule" that one who seeks to enforce a contract provision for liquidated damages should have the burden of proof. In my best judgment, the rule as

---

[1] *See, e.g., Associated Press v. Emmett,* 45 F Supp 907, 917 (SD Cal 1942); *Garrett v. Coast and Southern Federal Sav. & L. Ass'n,* 9 Cal 3d 731, 108 Cal Rptr 845, 511 P2d 1197, 1202 (1973); *McCarthy v. Tally,* 46 Cal 2d 577, 297 P2d 981, 986-87 (1956); *Better Food Markets v. American Dist. Tel. Co.,* 40 Cal 2d 179, 253 P2d 10, 14 (1953); *Rice v. Schmid,* 18 Cal 2d 382, 115 P2d 498, 499 (1941); *Bowbells Pub. Sch. Dist. No. 14 v. Walker,* 231 NW2d 173, 178 (ND 1975); *Hofer v. W.M. Scott Livestock Company,* 201 NW2d 410, 416 (ND 1972) (applying South Dakota law); *Massey v. Love,* 478 P2d 948, 950 (Okla 1971); *Waggoner v. Johnston,* 408 P2d 761, 768 (Okla 1965).

stated by both Corbin and by the previous decisions of this court, is the proper rule and should not now be either directly repudiated or indirectly emasculated by this court, particularly in a case such as this,[2] in which this important question was not raised or argued by either party.

2. *The provision for liquidated damages was unenforceable as a penalty under plaintiffs' own evidence.*

This case involves a provision for liquidated damages which appears as a "boiler-plate" provision in the "fine point" of a form "deposit receipt and agreement" prepared by a realtor. The provision in controversy reads as follows:

> "It is agreed, if either seller or buyer *fails to perform his part of this agreement,* he shall forthwith pay to the other party hereto a sum equal to 10 per cent of the agreed price of sale as consideration for the execution of this agreement by such other party." (Emphasis added)

According to the testimony, the parties themselves never met. There was no testimony by either party or by the realtor of any discussion, much less negotiation, regarding that provision for liquidated damages.

The agreement provided for various things to be done by each party. The sellers were required, among other things, not only to deliver into escrow a deed conveying good title to the real property involved and

---

[2] The majority says that in *Wright v. Schutt Construction,* 262 Or 619, 629, 500 P2d 1045 (1972), this court indicated a disposition toward reconsidering the question of the burden of proof in such cases. The court held in *Wright* that when a party resisting a claim for liquidated damages contends that *no actual damages* were suffered *in fact* as a result of the breach of the contract (as distinct from the requirements of the rule as stated in Restatement of Contracts § 339 (1932), in terms of a "forecast" of the situation at the time the contract was made), that party has the burden proving "that contention." It was in that context that the court made the statements quoted by the majority.

In any event, subsequent to our decision in *Wright,* this court twice again reaffirmed the rule that the burden is upon the plaintiff to prove that a contract provision for liquidated damages satisfies the requirements of Restatement § 339. *See Babler Bros., Inc. v. Hebener,* 267 Or 414, 419-21, 517 P2d 653 (1973), and *Shaw v. Northwest Truck Repair, Inc.,* 273 Or 452, 541 P2d 1277 (1975), both cited by the majority as holding to that effect. (See note 5 of the majority opinion.)

[ 440 ]

to pay one-half of the closing costs and escrow fees, but also to deliver various pieces of farm equipment, including, among other things, 990 feet of four-inch irrigation pipe, 1,960 feet of three-inch irrigation pipe and 24 irrigation heads. They were also required to "secure septic tank approval for rest-room" areas, which were also required to be "clean & ready for occupancy at date of close." The purchasers were required, among other things, not only to deposit in escrow $34,000 "on or before" January 1, 1974, and to pay one-half of the closing costs and escrow fees, but also to pay $6,000 each year until the balance of $95,000 was paid, with the first payment due on January 1, 1975.The majority opinion states that:

> "* * * In our previous cases we have deemed it essential that there be evidence bearing upon the two elements necessary to sustain a provision for liquidated damages, showing (1) that actual damages are difficult to estimate, and (2) that *there must be a reasonable relation between the damages agreed upon and the loss which might have been foreseen. * * *"* (Emphasis added)

The requirements which must be satisfied to sustain a contract provision for liquidated damages are stated somewhat differently in the Restatement of Contracts § 339 (1932), which states that a contract provision for liquidated damages is not enforceable unless:

> "(a) the amount so fixed *is a reasonable forecast of just compensation* for the harm that is caused by the breach, and
>
> "(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." (Emphasis added)

The rule as stated in Restatement § 339 has been expressly approved and adopted by this court in *Harty v. Bye,* 258 Or 398, 407, 483 P2d 458 (1971).[3]

---

[3] *See also Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965); *Wright v. Schutt Construction,* 262 Or 619, 623, 500 P2d 1045 (1972); *Babler Bros., Inc. v. Hebener,* 267 Or 414, 419, 517 P2d 653 (1973); and *Shaw v. Northwest Truck Repair, Inc.,* 273 Or 452, 541 P2d 1277 (1975).

It may be conceded that the second of these requirements is satisfied by the evidence in this case. In my opinion, however, the first of these requirements is not satisfied.

Comment (*b*) under Restatement § 339(1) reads as follows:

> "Contracts are frequently made in which performances of very different degrees of importance and value are promised and one large sum of money is made payable as damages for any breach whatever. *Since such a contract promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one* or of the whole contract, *it is obvious that the parties have not adhered to the rule of just compensation. * * ****"4 (Emphasis added)

In addition, as stated in 5 Corbin on Contracts 345, § 1059 (1964), there must have been "a genuine pre-estimate" by the parties of the extent of injury that will be caused by a future breach of the contract.

In *Alvord v. Banfield,* 85 Or 49, 58, 166 P 549 (1917), although decided prior to the adoption of Restatement § 339, this court held to the same effect, as follows:

> "* * * *If there is an agreement for a fixed, unvarying sum, without regard to the date of the breach,* when in the very nature of things the date of the breach would be all-important in determining the element of actual damages, the stipulation must be held to be one for a penalty: 8 R.C.L., § 114, p.564; note, Ann. Cas. 1912C, p.1025. In Section 115 of 8 R.C.L., p. 567, the author states:

> " 'In other words, the damages stipulated for must be such as to amount to compensation only, and *if the principle of compensation has been lost sight of the sum named will be treated as a penalty.*' " (Emphasis added)

To the same effect, in *Dairy Coop. Ass'n. v. Brandes Cry.,* 147 Or 488, 500, 30 P2d 338 (1934), this court held invalid a contract provision for liquidated dam-

---

4To the same effect, see 5 Corbin on Contracts 379, § 1066 (1964), and 5 Williston on Contracts 726, § 783 (3d ed 1961). *But see* McCormick on Damages 610-12, § 151 (1935).

ages that imposed *the "same penalty for the violation of one provision of said contract as for the violation of any other of said provisions * * *,"* citing *Elec. Prod. Corp. v. Zeigler Stores,* 141 Or 117, 125-26, 10 P2d 910, 15 P2d 1078 (1932).

This court has not had occasion to consider the particular problems presented in *Alvord* and in *Dairy Coop* since the adoption by this court of Restatement § 339. Other courts, however, have reached the same result under the rule as stated in Restatement § 339. Thus, a provision in a lease for liquidated damages in a fixed percentage of cost, regardless of the date of a breach of the lease, was held to be invalid as a penalty in *Chandler Leas. Div., Etc. v. Florida-Vanderbilt Dev. Corp.,* 464 F2d 267, 271 (5th Cir 1972), citing Restatement § 339 as authority and stating that:

> "The percentage remained inflexible throughout the years of the lease and in no part served as a reasonable forecast of *just compensation,* which is the hallmark for legal damages under Florida Law. Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395 (1948); Hungerford Const. Co. v. Florida Citrus Exposition, 410 F.2d 1229 (5 Cir.), cert. denied 396 U.S. 928, 90 S. Ct. 263, 24 L.Ed.2d 226 (1969); 1 Restatement of Contracts § 339 (1) (1932). For example, consider how unconscionable such a flat exaction would be in the latter months of the lease." (Emphasis theirs)

To the same effect, see *Commissioner of Insurance v. Massachusetts Acc. Co.,* 310 Mass 769, 39 NE2d 759, 760 (1942), cited Restatement § 339, among other authorities in support of its holding that a provision for liquidated damages is unenforceable when a contract contains "many covenants of varying importance."

Since its approval of the rule as stated in Restatement § 339, however, this court, in *Wright v. Schutt Construction,* 262 Or 619, 624, 500 P2d 1045 (1972), has also approved the further rule as stated in Corbin that there must be a "genuine pre-estimate of injury

as of the time when the contract was made," and went on to hold that

> "* * * [I]t is sufficient if at that time parties in an equal bargaining position make an honest and good faith effort to arrive at such an estimate. This is also consistent with the requirement of 1 Restatement, *supra,* 552, § 339(1)(a) that there must be a 'reasonable forecast of just compensation for the harm that is caused by the breach.' * * *"

Under these rules, as stated by this court in *Alvord, Dairy Coop* and *Wright,* and also as stated in Restatement § 339 and Comment (1)(*b*), and in Corbin, the contract provision for liquidated damages of 10 percent, or $13,000, is unenforceable as a penalty for several reasons, including the following.

■ There was no "genuine pre-estimate of injury" because there was no evidence of any "effort," whether "honest and in good faith" or otherwise "to arrive at such an estimate." On the contrary, the evidence affirmatively showed that there was no such "effort" of any kind.

■ Under this liquidated damage provision the same sum of $13,000, would be payable for the breach of any one of several provisions of the contract of "very different degrees of importance and value." These would include, for example, breaches by the seller that would follow not only from failure to deliver a deed conveying good title, but also from his failure to deliver all of the specified items of personal property, including any item of farm equipment and the full specified footage of each of two kinds of irrigation pipe, as well as the failure to turn over the "rest-rooms in arena" in such a condition as to be "clean & ready for occupancy at date of close." Similarly, the sum of $13,000 would also be payable by the buyer not only for a total breach of the contract, but also for failure to pay any of the installments of $6,000 promptly on or before January 1st of each year, beginning January 1, 1975, including the breach that would follow, for

example, from a delay of five days in the payment of any such installment.

Under these facts it cannot properly be said that the provision for payment of liquidated damages in the sum of $13,000 was a "reasonable forecast of just compensation for the harm" caused in the event that "either seller or buyer fails to perform his part of this agreement."

In *Wright v. Schutt Construction, supra,* at 629, upon application of the rules as stated in Corbin and in Restatement § 339, we held that the trial court did not err in its holding that a provision in a real estate listing agreement under which the seller would have been required to pay 10 percent of the purchase price, or $22,000, was not a "reasonable forecast for just compensation caused by the breach," even in the absence of the additional element of possible breaches of "different degrees of importance," as in this case.

In this case the trial court also held that this provision for liquidated damages was unenforceable because it was "not a reasonable forecast of just compensation." In my judgment, the trial court, in arriving at that decision, and in awarding instead a judgment for the actual damages suffered by plaintiff in the sum of $4,085, correctly applied the rules of law as established by the previous decisions of this court and should be affirmed.

For all of these reasons I most respectfully dissent.

McALLISTER, J., and BRYSON, J., join in this dissent.